—————o—————

JOHN F. DIERKER, SHERIFF OF ST. CHARLES COUNTY, TO THE USE OF CORNELIUS SHOEMAKE, Respondent, *vs.* CHARLES E. HESS, *et al.*, Appellants.

1. *Parent and child—Child's earnings, claim to, how relinquished.*—The relinquishment of the father's claim to the earnings of his minor son may be established by direct evidence, or may be implied from circumstances.

*Appeal from St. Charles Circuit Court.*

*B. B. Kingsbury*, for Appellant.

I. The earnings of a minor may be given to him, but there should be clearly shown to be a severance of the legal relation of parent and child. The emancipation must be complete and notorious—an advertisement to the world, that the child has become a man for himself, to act, possess, and control entirely and exclusively his own time, talents, and labor, and which must be continued, and not an occasional manifestation. (Reeves Dom. Rel. [Parker & Bald. Ed.], 422; Godfrey vs. Hays, 6 Ala., 501; Stovall vs. Johnson, 17 Ala., 14; Clinton vs. York, 26 Me., 167; Swain vs. Tyler, 26 Ver., 9;

St. George vs. Deer Isle, 3 Me., 390 ; Wells vs. Kennebunk, 8 Me., 200 ; Dennysville vs. Trescott, 30 Me., 470; U. S. vs. Mertz, 2 Watts, 406 ; Winchester vs. Reed, 8 Jones, [N. C.] 377 ; Worth vs. York, 13 Ired., 206 ; Bump Fraud. Convey., 273.) The gift could have been returned. (Cranz vs. Kroger, 22 Ill., 74.) The relation of parent and child could be resumed, (Everett vs. Sherley, 1 Iowa, 356,) and both the son and father acted as if the relation had been resumed.

II. The case of McCloskey vs. Cyphert, (27 Penn. St., 220,) was one, where the minor by means of funds furnished by friends, and by his own exertions, leased the land, which had been levied on and sold as the property of his father, and by his exertions, and assistance of friends, raised the crops levied on by creditors of his father.

III. The respondent was bound to take and continue in the exclusive possession and control of the property claimed by him after the alleged gift. (W. S., 280, § 4 ; Bump Fraud. Convey., [Ed. 1872] 182, 183 ; Claflin vs. Rosenberg, 42 Mo., 439 ; Lesem vs. Herriford, 44 Mo., 323.)

IV. The circumstances of the case should have been allowed to be weighed by the jury under the instruction of the court, asked for. (Howe vs. Waysman, 12 Mo., 169.)

V. The instruction, respecting fraudulent combination to defraud creditors, should have been given. There was sufficient evidence to warrant it. (Hillard New T., 278, § 37 et seq. ; Ridens vs. Ridens, 29 Mo., 470.)

VI. The instructions of court were vague and indefinite, (Hillard New T., 271, 272,) and contained an incorrect enunciation of the law, respecting minority of child. (See cases under first point.)

*Lackland and Broadhead*, for Respondent:

I. If the father allows the minor son his wages and earnings, the father cannot demand them either from the minor or his employer, nor can they be attached by the father's creditors. (1 Pars. Conts., 258 ; 1 Story Eq., 77, § 74.)

II. Where the owner does not allow creditors to be misled

by his silence, or by his acts and declarations, other than the mere act of allowing it to remain in another's possession, then he is not estopped to claim the property. (McDermott vs. Barnum, 16 Mo., 114.)

SHERWOOD, Judge, delivered the opinion of the court.

Action in the St. Charles Circuit Court on an indemnifying bond to the use of Cornelius Shoemake, brought by Dierker, to whom, as sheriff, the bond was executed by Hess, administrator of John Spencer's estate, and plaintiff in an execution levied upon certain horses and hogs as the property of Enoch Shoemake, but claimed in due form of law by Cornelius Shoemake, the son, as his property. A sale under the execution took place, and this suit is to recover the damages arising from such sale.

When the cause came on for trial, a jury was impaneled, and evidence adduced to this effect, that the father, Enoch, had several years previously given to his son, Cornelius, during his minority the privilege of appropriating his earnings to his own use; that the son exercised the privilege thus granted him, and devoted those earnings to the purchase of horses and hogs, which with their increase was the subject of the levy of the execution, and the basis of the present litigation; that the son brought his purchases home to his father's house, continued to reside there, marked his hogs with his father's mark, permitted his stock to run with that of his father, let his father use the horses, sometimes used them himself in working on his father's farm and in assisting him to cultivate the same; that the son received no wages for such work, nor did the father charge him any board; that the son's horses and hogs were fed with the father's, that no separate crib or account was kept, but that the son used at times to pay the father for the corn so used; and that, when the son left home, the property was left in the possession and care of the father during his absence; that the son always claimed, and the father always recognized, the property as his son's, and never claimed it as his own. There

was some conflict in the evidence, but nothing having the slightest. tendency to show any fraudulent combination between father and son to defeat the creditors of the former.

The court of its own motion gave these instructions at the close of the testimony:

"The real question to be determined by the jury is, as to the ownership of the horses and hogs levied on as the property of Enoch Shoemake, and claimed by Cornelius Shoe make. And if it has been proven to the satisfaction of the jury, that the horses and hogs in controversy, and so levied on, belonged to the plaintiff, Cornelius Shoemake, at the time of the levy, and that he notified the sheriff in writing of his claim to the property before the sale, then the plaintiff is entitled to recover, and the measure of his damages is the market value of the property at the date of the levy; and unless it has been so proven, the verdict must be for the defendants. And the jury are further instructed, that the question of property in the horses and hogs is to be determined by considering all the facts and circumstances in evidence as to the claim, use, control, and possession of the property, including the minority of the claimant, and his permission to claim and enjoy his own wages while a minor. And the law as to minority is declared to be: If the minor is permitted to work for himself, and claim and enjoy his own wages, then he may purchase and own property independent of the parent's control. And if it has been made to appear from the evidence, that the creditors of Enoch Shoemake were misled by the acts and declarations of Cornelius Shoemake as to the ownership of the property, then the plaintiff is not entitled to recover."

To the giving of which the defendants excepted.

The defendants then asked several instructions, which were refused, and they excepted to this ruling, and also to the overruling of their motion for a new trial upon the return of a verdict in favor of the plaintiff.

The instructions given by the court at its own instance contained a full and fair exposition of the law applicable to the facts adduced in evidence.

The doctrine contended for by appellants' counsel is, although supported by several authorities, peculiarly abhorrent to my mind. It is not necessary, that the father, in order to give his minor son the privilege of receiving the fruits of his own labor, should proclaim that fact from the housetops, or accompany it by some token or ceremonial, as open and as odious as that which formerly attended the manumission of a slave; nor is it necessary to accomplish that end, that the son should cease to be a member of his father's family; that the dearest domestic ties should be rudely sundered, and he driven like some alien and outcast from beneath the paternal roof.

The fact, that the father has thus relinquished his claims to the son's earnings, may be established either by direct evidence or be implied from circumstances; and, where such relinquishment has been *bona fide* effectuated, it does not lie in the power of some prowling creditor to wrest from the son the gains he has achieved by honest industry, under the specious and covetous pretext that the property belongs to the father.

As is well said in McCloskey vs. Cyphert, (27 Penn. St., 220): "If he (the father) happens to be in debt, he is not bound to work his son or daughter as he would a horse or slave for the benefit of his creditors." (Sto. Const., § 74; Morse vs. Welton, 6 Conn., 547; Jenney vs. Alden, 12 Mass., 385; 2 Kent, 193; Whiting vs. Earle, 3 Pick., 201; Corey vs. Corey, 19 *Id.*, 29; Canovar vs. Cooper, 3 Barb., 115, and cases cited; Cloud vs. Hamilton, 11 Humph., 104; McCloskey vs. Cyphert, 27 Penn. St., 220; Galbraith vs. Black, 4 Serg. & R., 207.)

As to whether the father, in the present instance, had waived his right to the services of his son, was a question, which, together with all other issues of fact necessary to be passed upon, was fairly left to the jury to answer; and their reply contained in their verdict must be a finality.

The propriety of the refusal of the defendants' instructions has been incidentally discussed in the foregoing remarks; as all the ground, which the defendants could on the facts of

the case legitimately occupy,' was completely covered by the instructions given.

The judgment is affirmed. Judge Adams absent. The other judges concur.