## INHABITANTS OF LOWELL *vs.* INHABITANTS OF NEWPORT.

## Penobscot, 1875.—July 24, 1876.

*Emancipation.*

Emancipation may be established by contract between the parent and child, as well as otherwise. It must be by consent, express or implied, of the parent if living, and is an entire surrender of all right to the care, custody and earnings of the child, as well as a renunciation of parental duties.

An emancipated minor does not follow the settlement gained by the parent after such emancipation.

Where the father, after acquiring a settlement in Newport, went with his son to Corinna, and resided there himself ever after, and before acquiring a settlement there emancipated his son who returned to Newport and resided more than five years during his minority; *held,* that the son's settlement after emancipation was all the while in Newport and not in Corinna, not on the ground of his own residence there, but that he followed the previously acquired settlement of his father; *held* also, that the derived settlement of an emancipated minor is that of his father at the time of emancipation, and not that acquired by his father at any time thereafter.

An emancipation of a minor is not to be presumed, but must always be proved. It need not be in writing.

Where the jury found an emancipation in fact under correct instructions as to the law, and had at least the testimony of the father and son upon which to rest it, the full court refused to set it aside.

ON EXCEPTIONS AND MOTION.

ASSUMPSIT, for supplies furnished from April, 1872, to August, 1873, to one Mary F. Lawrence, a pauper, about seventeen years of age, whose alleged settlement was in the defendant town, $91. The necessity of the supplies and all proper notices and replies were admitted; the only question being one of her settlement, which was that of Haskell Lawrence, her father, who it was admitted had a settlement derived from his father, Abel Lawrence, in Newport, in 1837. Abel in that year removed to Corinna, where he ever after resided, his son, born February 28, 1827, being then ten years old.

To fix the settlement of Haskell in Newport, and prevent his acquiring a new settlement in Corinna with his father, the plaintiffs alleged that in the winter of 1840–'41, the son being then thirteen or fourteen years of age, his father emancipated him; and evidence tending to prove and also to disprove that fact was introduced by the respective parties.

Evidence was introduced by the defendants, tending to prove that at the age of twenty-five years, Haskell was married on September 3, 1852, and that he then, at the time of the marriage, went to live with his wife at her father's, in Stetson, and that he subsequently lived there with her as his home; also at other places in Stetson, long enough in all, as the defendant contended, to gain a new settlement in that town; they were divorced in 1860; between these years her residence was in Stetson. The defendants' counsel asked the presiding justice to rule as follows to the jury:

I. That a legitimate child under the age of twenty-one years, follows the settlement acquired by his father before the child arrives at that age, notwithstanding the father and child had previously agreed on the part of the father to release the child's time until twenty-one years of age, and on the part of the child to support himself and hold him harmless from all charges.

II. No emancipation by a father of his son, thirteen or fourteen years of age, can be effectual to prevent the son from following a new settlement acquired by the father after his emancipation and before he is of age.

III. If emancipation can be effected by a contract and acts between father and son, as above supposed, the contract must be in writing.

IV. If the emancipation was produced by reason of the poverty of the father, it is not effectual to prevent the child's following the father's new settlement.

V. If the facts are as testified by Abel Lawrence, there was no emancipation.

VI. If the pauper's father established his residence in Stetson with his wife, living there with her two or three years, her continued residence there is *prima facie* evidence of his.

These several requests were denied.

The presiding justice instructed the jury, that the plaintiffs, claiming that there was an emancipation of the son by the father, the burden of proof was on them to show it; he must prove that he gave the son his time; that the age of the son at the time was immaterial, nor was it necessary that it should be made public, nor in writing; and no prescribed form of words is required, but

it must be express and positive, must be proved and not presumed, may be proved by the testimony of the parties, or inferred from the acts and declarations of the parties; but once emancipated, the father cannot resume his rights. The age of the boy is a matter for consideration as to the probability of the story.

As to the father receiving his son's wages at any time, did the father claim them as matter of right, and did the son claim them because he earned them; did the father claim them in violation of agreement, or because there was no agreement, as matter of right or equity; all these considerations were proper to be taken into account by the jury in judging of the fact, whether or not there was an emancipation.

On the point of his alleged settlement in Stetson, the judge instructed, that five years' continuous residence in that town, without receiving supplies as a pauper, would give him such settlement; that if he abandoned his wife, and left with the intention of abandoning her and his home, that would cease to be his home; but that an abandonment of the wife was not necessarily an abandonment of his residence, the will of the husband determines his residence; the fact of the wife remaining and having her home is a fact, the effect or weight of which is for the jury; the departure must be with an intention to abandon.

In submitting the case, the court by assent of both parties submitted to the jury to find and make answer to two interrogatories:

I. Was there an emancipation of the son by the father?

II. Did Haskell have his residence five successive years in Stetson?

The jury returned a verdict for the plaintiff, and answered the first question in the affirmative, but made no reply to the second.

The counsel objected to affirmation of verdict because of this default in answering the last question, but the court allowed the verdict to be affirmed and recorded.

The defendants excepted to the above rulings and refusals, and to the acceptance of the verdict.

*A. W. Paine*, with whom was *E. Walker*, for the defendants, recapitulated his points as follows:

I. The plain and unequivocal language of the statute that "legit-

imate children have and follow the settlement of their father until they gain a settlement of their own," originally enacted in 1794, adopted by our state in 1821, subsequently re-enacted in the same or substantially the same words in each of the three subsequent revisions and now a part of our pauper law, leaves no room for judicial construction or legal doubt.

II. Any attempt to avoid this explicit and unmistakable enactment by any arrangement or agreement secretly made between a father and his infant child, whereby the parental duties and obligations are surrendered and avoided, is a violation of the first principles of natural law, opposed to good morals, conscience and religion, rebuked by the plainest provisions of the common law, and, if, by parol, directly in violation of the positive enactment of the statute of frauds; for each and all which objections, such arrangement is absolutely void, leaving each party at liberty at its pleasure to ignore its effect and disregard its requirements, and thus render it wholly nugatory and ineffectual.

III. No emancipation, productive of the result here claimed, can be effected, which is based upon any volition of the infant as one of its necessary factors; but only such emancipation can produce that result as is forced upon the infant by misfortune in the death (or perhaps insanity,) of his parents, or second marriage of his widowed mother. And only such emancipation is thus effective as enables the infant, in the language of the statute, to "gain a settlement of his own," in some of the modes provided by law. The right to gain a derivative settlement continues so long as the party lives through whom the derivation is derived; the derivation is not subject to be defeated by any voluntary act of the party, nor by any act save that of nature or the law, which casts upon the infant the involuntary results of misfortune.

IV. The doctrine advanced, that an infant may be emancipated by agreement with its father so as to prevent its taking any new settlement of its father acquired during its minority, in violation of the express language of the statute, is believed to be wholly without authority in either of the states of Maine or Massachusetts or any where else; the cases in which expressions used to convey any such idea are relied upon, not being authority as decisions but

only *dicta*, sayings, and not decisions, and having their sole appli cation to emancipation forced upon the infant by misfortune and independent of his volition. If, however, in all this we are mistaken and a father can by agreement with his infant child effectually repeal the words of an unambiguous statute and change all the relations of towns and municipalities with each other, then we contend further.

V. That to produce that result the court should require the strongest proof of the fact, that no mere inference drawn from doubtful facts should avail, but that it should be done in as careful manner as is provided for the transfer of parental duties in the statute relating to "masters, apprentices and servants."

VI. The testimony of Abel Lawrence, the father, does not make proof of such emancipation as the plaintiffs' case requires, and the requested instruction should have been given to that effect; inasmuch as with other things it does not appear from his testimony that he released his son's time during his entire minority, nor absolutely at all, but simply for the time and on condition that he should live with his grandfather, which time and condition were both violated.

VII. As matter of fact, the evidence fails to prove by a preponderance of testimony that there was any emancipation such as set up, the two witnesses who alone testify to the arrangement differing from each other on most material points, thus in a great measure neutralizing each other; both, too, having told very different stories, deliberately and seriously, varying widely from their testimony, thus falsifying their own evidence, [&c., &c.]

VIII. As to his settlement in Stetson; the requested instruction as to the *prima facie* force of the wife's residence in settling that of her husband should have been given.

IX. And finally the neglect to pass upon the fact of his new settlement in Stetson shows such a misconception of the case on the part of the jury as to render their verdict under all the circumstances of the case not worth saving.

*D. D. Stewart*, and with him *F. A. Wilson & C. F. Woodard*, for the plaintiffs.

DANFORTH, J. This is an action under the pauper law ; and the question at issue is the settlement of the pauper.

The supplies sued for were furnished Mary F. Lawrence, who has the settlement of her father, Haskell Lawrence, who had a settlement in the defendant town in 1837, derived from his father Abel Lawrence. It appears that subsequent to 1837 and while Haskell, the son, was yet a minor, the father gained a settlement in Corinna. The principal question arising under the exceptions, is whether the son followed this newly acquired settlement of the father.

The plaintiffs contend that he did not, on the ground that he had been previously emancipated. The defendants, denying the fact of emancipation, claim that if it were so, he would still go with and have the settlement of the father in Corinna. This presents the question whether a minor can, under the law, be emancipated by the act of his father so as to prevent his following and having any subsequent settlement gained by the father while he is a minor.

This involves the construction of the second mode of gaining a settlement under R. S. of 1841, c. 32, § 1, that being the law applicable to this case. It reads as follows : "legitimate children shall follow and have the settlement of their father, if he have any within the state, until they gain a settlement of their own : but if he have none, they shall in like manner follow and have the settlement of their mother, if she have any."

It is contended by counsel that this provision is so plain that it cannot be misunderstood and needs no interpretation, and that its literal reading and meaning is its true one. We might readily admit this, were we to take it alone, unconnected with other parts of the same section, and without the light thrown upon it by the ever varying facts and conditions of life to which it must be applied. If taken literally, the children would follow the father even after becoming of age, unless they have gained a settlement of their own. But this cannot be the meaning of the legislature. This statute as well as others must be construed by the subject matter to which it is applicable. For the purposes of business and the ordinary affairs of life, children are not, in law, always regarded as members of the father's family. There must ordinarily be

a time when the child may act for himself and independent of his parents. For this reason it seems eminently proper and even necessary to insert into the law a qualification which is not therein expressed, but is there by implication only.

The same result will be reached by a construction of this clause in connection with other parts of the section. We find other modes provided by which settlements may be gained. Any person resident in a town March 21, 1821, under certain circumstances, gains a settlement. The same thing happens to all persons having their home in any unincorporated place when it shall be incorporated into a town. But "any and all persons" literally applied would include minors as well as those of age; and if thus applied a child might have one settlement derived from his father and at the same time another in a different town gained for himself by virtue of other provisions of the law; as this is not allowable, it is clear that the law cannot be literally rendered. We must find some explanation of its meaning which will give due force and effect to all its parts; as all must stand together, no one portion repealing another. What then must have been the intention of the legislature as gathered from the whole section and applied to the subject matter referred to?

The reason of the first provision may lend us material aid; and what reason can be given why the child should follow the father, except the policy of keeping families together? When there is no longer occasion for that, or when for any reason the child has ceased to be a member of the family and is no longer dependent upon the parent, then the reason for the law has ceased and ordinarily in such cases the law ceases.

Then, applying the same test to the other provisions referred to, if persons are to include children dependent upon their parents, the provision is, or may be, not only inconsistent in its operation with the first in the respect already referred to, but it may violate that fundamental principle of public policy on which that is founded, by often separating parents from their children.

Following out this view, we shall find no difficulty in adopting a principle of construction which will harmonize all these different provisions and at the same time give effect to the evident inten-

tion of the legislature. This principle is found in the doctrine of emancipation. If the emancipated child no longer follows his parents, and none but the emancipated can gain a settlement independent of his parent, all the difficulty vanishes. We then have a statute harmonious as a whole, which violates no policy by separating families, and which provides for all individuals as such.

In harmony with this view, we find all the decisions to which our attention has been directed, and they are quite numerous. Even the child who has arrived at twenty-one years of age, is subjected to the same test; for that fact is held not conclusive proof of an emancipation. *Monroe* v. *Jackson,* 55 Maine, 55, and cases cited.

This same statute has been in force in Massachusetts and in this state since 1793; and there appears to be no conflict in the decisions or dicta.

In *Springfield* v. *Wilbraham,* 4 Mass. 493, it was held that the words of the statute could not be taken literally. Parsons, C. J., says: "But when the father ceases to have any control over his children, or any right to their service, it is not easy to devise any good reason why they should not be considered emancipated, and as no longer having a derivative settlement with the father on his acquiring a new settlement." In this case the emancipation was on his becoming of age.

In *Charlestown* v. *Boston,* 13 Mass. 469, it was held that a minor daughter emancipated by marriage, did not follow a subsequently acquired settlement of her widowed mother.

In *Great Barrington* v. *Tyringham,* 18 Pick. 264, the court fully recognizing the principle contended for, found that the facts relied upon to show an emancipation did not constitute one, and therefore the minor followed the settlement of his mother.

The same principle is recognized and acted upon in *Upton* v. *Northbridge,* 15 Mass. 237; *Taunton* v. *Middleborough,* 12 Met. 35, and *Shirley* v. *Lancaster,* 6 Allen, 31.

In New Hampshire, the same interpretation has been given to a similar statute as fully appears by the cases from that state cited by the plaintiffs' counsel.

In our own state, the doctrine, that a minor emancipated may

gain a settlement independent of the parent and from the time of emancipation ceases to follow that of the parent, has been recognized and settled by a long and unbroken series of cases. *Lubec* v. *Eastport*, 3 Maine, 220. *Portland* v. *New Gloucester*, 16 Maine, 427. *Garland* v. *Dover*, 19 Maine, 441. *Tremont* v. *Mt. Desert*, 36 Maine, 390. *Oldtown* v. *Falmouth*, 40 Maine, 106. *Monroe* v. *Jackson*, 55 Maine, 55. *Bucksport* v. *Rockland*, 56 Maine, 22. *Hampden* v. *Brewer*, 24 Maine, 281. *Dennysville* v. *Trescott*, 30 Maine, 470 ; and many others.

This last case is decisive of the point we are now considering, in every respect ; and so far as we know its soundness has never been called in question either here or elsewhere. On the other hand, in all the cases the point is treated as settled doctrine, and not even a doubt raised as to the effect of emancipation in taking the child from any subsequently acquired settlement of the father.

But, without seriously contesting the authority of these cases, it is earnestly contended that it is only an emancipation by the death of the parent, or by misfortune, that can have the effect claimed for it here, and not one that is the result of a contract between the parties. But the cases make no such distinction, and in many of them the emancipation in question rested upon a supposed contract. In *Portland* v. *New Gloucester*, above cited, it was directly founded upon a contract, and the decision turned upon that fact. In *Wells* v. *Kennebunk*, 8 Maine, 200, the contract was deemed sufficiently proved by the conduct of the parties. In *Oldtown* v. *Falmouth*, cited above, Rice, J., says, "emancipation is ordinarily a matter of contract. When the parents are living, there must be consent proved on their part, or acts from which such consent may be inferred, to constitute emancipation ;" and simply because the contract was not proved the child followed the settlement of the father. In *Dennysville* v. *Trescott*, the emancipation was founded upon the consent of the mother, and was effectual in its influence upon the settlement of the child.

Where the emancipation is by marriage, the effect of which is not doubted, it is still by contract, for in such case the marriage to be effectual must be by consent of the parent, and consent is virtually a contract. *White* v. *Henry*, 24 Maine, 531. *Bucksport* v. *Rockland*, 56 Maine, 22.

It would seem that these cases are something more than "mere dicta, sayings and not decisions."

But as a matter of principle, why should there be any distinction between emancipation by misfortune and by contract? If there is an emancipation, of what consequence is it from what source it comes? If it is an emancipation, if the child is taken from the custody of the parent, and the parent relieved from the care of the child, there is as much a surrendering of the family tie if this is done by contract, as if accomplished by misfortune. But it is said that such contracts are against the policy of the law. It is undoubtedly against the policy of the law to force a separation of families against the wishes of those interested. But to permit the parties to do it, is entirely another thing. Such separations are not unfrequently useful to all concerned. In *Whiting* v. *Earle & tr.*, 3 Pick. 201, Parker, C. J., says in substance that though a father is entitled to the earnings of his son, "the court thought it equally clear that he might transfer to the son a right to receive them. This is necessary for the encouragement of young men; and it is often convenient for a father." Many cases might be cited where such a separation might promote the best interest of the child, if not of the parent. It may be that as a general rule the family circle is the best place in which to train and fit children to perform well the duties of life; but unfortunately there are exceptions to this rule, which may arise from misfortune or inability on the part of the parents. In such cases the law places no impediment in the way to prevent the parties from improving their condition and permits them within reasonable limits to exercise their own judgment as to the method of doing it.

All authorities agree that it is a voluntary matter on the part of the parents if living. If the minor voluntarily leaves his father's house without fault on the part of the latter, the father is under no legal obligation to pay for his support or education. *Angel* v. *McLellan*, 16 Mass. 28. *Weeks* v. *Merrow*, 40 Maine, 151.

If the father forces his child to leave his house, or deserts or abandons him, the child is released from all filial duties which the law will enforce and may seek his own welfare in his own way. Thus an emancipation may be accomplished by wrong and violence

and be sustained by the law, if the injured party chooses to accept the situation. It would be singular indeed if the same thing could not be accomplished by a contract between the same parties, without subjecting themselves to a charge of violating the policy of the law.

But it is further said that though a contract of this nature may be valid for many purposes, yet it cannot be made instrumental in setting aside the plain provisions of the statute, that the rights and liabilities of towns as fixed by the law cannot be varied by the contracts of parties. This proposition as stated is undoubtedly true; whatever the parties may do, the law remains the same. It is however not to be forgotten that while the acts or agreements of individuals are not to change or abrogate the law, the law is to be applied to these acts and agreements. It is the act of the person in fixing his abode that renders one town or another liable for his support if he becomes a pauper. Emancipation or want of it, does not change any law; but it is often an important element to be taken into consideration, in applying existing laws. It is the people who make the facts; and to those facts the court are to apply the laws. When a pauper is found in the community he must be relieved; and his condition, the circumstances by which he is surrounded, determine what town shall be liable for his support, whether those circumstances were brought about by his own acts or otherwise.

It is further claimed that emancipation by contract to be effectual must be in writing, as one not to be executed within the year. This, however, is an erroneous view of the nature of this contract. It is not one, as seems to be supposed, the execution of which is to be completed only when the minor becomes of age. On the other hand, it may be, and usually is, executed at once. The destruction of the parental and filial ties which it contemplates, take place when the contract is completed, and each party at once goes free from the restraints which bound him to the other.

In accordance with this view, we find the authorities. In *Abbott* v. *Converse*, 4 Allen, 533, emancipation was considered as a gift by the father to the son. A promise to give is revocable, but executed, irrevocable. In *Dennysville* v. *Trescott*, it was

proved by the acts of the parties, and not by writing, and so in most or all of the cases cited.

But a question arises here, whether the testimony in the case sustains the fact of emancipation. There have been many cases in which this question has been considered; but like all questions of fact, the result of each case must depend very much upon its own circumstances. There are, however, certain fixed principles of law applicable to cases of this kind. What is emancipation may be considered a question of law; whether it has taken place, a question of fact.

The instructions of the presiding justice to the jury upon this point were clear, distinct, and fully sustained by the authorities. In the language of Shepley, C. J., in *Sanford* v. *Lebanon*, 31 Maine, 124, the test to be applied is that of the "preservation or destruction of the parental and filial relations." In *Clinton* v. *York*, 26 Maine, 167, it was proved that the daughter had lived in a good many places; that her father had said he would not have her at his house; that his wife was quarreling with her; that he was not able to take care of her in the circumstances she was then in; and the brother took her home; this was held not to prove emancipation. In *Great Barrington* v. *Tyringham*, before cited, it was held that a minor, living in another state away from the parents, as an apprentice, was not thereby emancipated.

A minor bound to service by the overseers until he becomes of age, is not emancipated. The father's consent to a surrender of his rights is wanting, and without that, either express or implied, there can be no emancipation. *Oldtown* v. *Falmouth*, before cited. *Frankfort* v. *New Vineyard*, 48 Maine, 565. In *Monroe* v. *Jackson*, 55 Maine, p. 59, Barrows, J., says: "It occurs by the act of God in depriving the child of his natural protector by death, or by the voluntary act of the parent surrendering the rights and renouncing the duties of his position, or, in some way, conducting in relation thereto, in a manner which is inconsistent with any further performance of them. Poverty, even culminating in absolute pauperism of the parent, and resulting in a binding out to service of the child by the selectmen, until he is twenty-one years of age, does not effect it."

In *Portland* v. *New Gloucester*, there was an absolute surrender on the part of the parent of the custody of the child, and all his rights and duties in relation to it; an entire conveyance of all these rights to another person. Such a renunciation was held to be emancipation.

From these cases, as well as from others in harmony with them, the principle to be deduced is, that emancipation such as will affect a settlement under the pauper law, however it may be in other cases, must be an absolute and entire surrender on the part of the parent, of all right to the care and custody of the child, as well as to its earnings, with a renunciation of all duties arising from such a position. It leaves the child, so far as the parent is concerned, free to act upon its own responsibility, and in accordance with its own will and pleasure, with the same independence as though it were twenty-one years of age. Indeed, the best test which can be applied is the separation and resulting freedom from parental and filial ties and duties, which the law ordinarily bestows at the age of majority.

The jury, by their verdict, have found such an emancipation. To sustain the verdict, we have at least the testimony of the father and son, who may be presumed to know the facts better than others. Their credibility was peculiarly a question for the jury; and although we might have come to a different conclusion, we do not see sufficient reason for disturbing theirs.

*Motion and exceptions overruled.*

APPLETON, C. J., DICKERSON, VIRGIN and LIBBEY, JJ., concurred.

PETERS, J., having been consulted, did not sit.