DENNIS G. EVANS, Respondent, v. THE KANSAS CITY BRIDGE COMPANY, Appellant.

In the Kansas City Court of Appeals, January 8, 1923.

1. PARENT AND CHILD: Parental Control: Minor's Wages: Parent Held not Entitled to Recover an Amount Equal to Earnings Paid His Son Before Death. In an action by a father to recover the value of his deceased minor son's services from a bridge company which had paid the son therefor, where it was admitted that since the boy was three years old, the father had not exercised parental control or supported him, that he never had any idea of demanding the boy's wages from him and if he had lived would not have accepted his wages and that it was only after the boy's death he made up his mind to demand the wages, *held* he was not entitled to recover.

2. ———: ———: ———: Parent's Right to Services and Earnings of Minor not Absolute. A parent's right to the services and earnings of his minor son are not absolute but contingent upon his actually providing support for the infant and retaining parental control over him.

3. ———: Emancipation: Evidence: Emancipation May be Express or Implied. Emancipation from father's control can be shown not only by express agreement but also by conduct from which it may be implied.

4. ———: ———: Circumstances of Employment of Minor Held to Justify Assumption That he Had Been Emancipated. Where a boy, fifteen years old, appeared at bridge company's camp saying he was hungry and desired work, that he had no one to support him and had to make his own living, that he could not get along with his father and made his home with his aunt, *held* that the

employment of the boy was in good faith upon the assumption by the employer, justified by the circumstances, that he had been emancipated.

5. ———: Employer Paying Wages to Minor does so at His Peril. One who employs a minor and pays his wages to him, does so at his peril.

6. ———: Contract Entered into by Minor During Emancipation Cannot be Abrogated by Parent in Revoking the Emancipation. Where there is an emancipation and the child during that time has entered into lawful contractual rights, the parent cannot, by revoking the emancipation, abrogate the child's contract or affect the rights of the contracting parties acquired thereunder.

Appeal from the Circuit Court of Cole County.—*Hon. John G. Slate,* Judge.

REVERSED.

*David W. Peters* for respondent.

*Lathrop, Morrow, Fox & Moore* and *Marvel H. Davis* for appellant.

TRIMBLE, P. J.—This is an action by a father to recover the value of his minor son's services rendered to defendant while in the latter's employ. There was a verdict and judgment for plaintiff in the sum of $500 and defendant appealed.

The son was born in 1903. In 1906 when he was three years old his mother died, and his paternal aunt took him into her own family where he thereafter lived, the aunt and her husband supporting him, sending him to school and caring for him as though he were their own child. This was with the father's whole-hearted consent, for, after the mother's funeral, the father told his sister "to take the boy and do by him as she would by one of her own children." The father never paid anything for the boy's maintenance or support. He does say that once he bought the boy a shirt (the price of which he does not remember), and once he paid $3 on a

doctor's bill, and at another time he gave the boy $5 in money. This was all the father did during a period of fifteen years prior to the boy's death which occurred in his 18th year as hereinafter related. Plaintiff admits that he never at any time paid anything for the boy's keep, his schooling or education. The father says he heard at various times that the boy was selling newspapers about town—Jefferson City; that he thought the boy was at work and wanted him to be, as he didn't want him to be "lazying around." He says also that he never had any idea of demanding money from the boy's aunt or her husband if he worked for them and never demanded of the boy any of his money, because "I didn't think I was entitled to it" and "didn't really want it." He says that had his son lived he would never have taken the boy's wages from him, and admitted that it was only after the boy's death that he made up his mind to demand his son's wages.

In May, 1918, the boy being then fifteen years old, left his aunt's home and some time in that month appeared at the defendant's camp near Huntsdale, Missouri, saying he was hungry and desired work. He told defendant he had no one to support him, that he had to make his own living, that he couldn't get along with his father and had made his home with his aunt. He was given work as a water boy and worked for defendant until some time in October, 1918. From that date until August, 1920, he did not work for defendant but "batched" with a man by the name of Kimberlin and was engaged in trapping in winter and raising watermelons in summer.

In August, 1920, the boy again entered the employ of the defendant and continued in its employ until in April, 1921, when he fell from one of defendant's barges into the Missouri river and was drowned. The aggregate of all the wages he earned was $1266.75 which, less certain deductions for board and other miscellaneous items, was paid to him in cash by defendant.

It is urged that under the father's own showing he

is not entitled to recover and that, therefore, defendant's demurrer to the evidence should have been sustained.

We think the point is well taken and that it should be upheld. A parent's right to the services and earnings of his minor son are not absolute, but contingent upon his actually providing support for the infant and retaining parental control over him. [Chaloux v. International Paper Co., 75 N. H. 281.] "At common law, the father is entitled to the services and earnings of his minor children, because he is bound to support and educate them. The right grows out of the obligation and is correlative to it. When one ceases the other ceases also." [Campbell v. Cooper, 34 N. H. 49, 62-63.] The right of a parent to the earnings of a minor is allowed in consideration of the support of the child by the parent; and where he has not done this he can have no claim to the child's time. [McMorrow v. Dowell, 116 Mo. App. 289, 298.] The right to the child's earnings arises out of the duty to support the child, and where the parent neglects that duty, or voluntarily releases his parental control to a third person, he loses the right to the child's earnings. [29 Cyc. 1627, 1628.] When the duty to support no longer remains, the right to the child's earnings ceases also. [Jenness v. Emerson, 15 N. H. 486.] Where the father has discharged himself of the obligation to support the child, there is no principle which will continue his right to receive the earnings of the child's labor. [Nightingale v. Withington, 8 Am. Dec. 101, 102.]

It is manifest from plaintiff's own testimony also that the father knew the boy was working and earning money and that he never intended to take any money from the boy, that he didn't consider himself entitled to it, never made any demand for his wages and never intended to do so, and did not conceive the idea of demanding the boy's wages until after the boy was dead, when no loss would be inflicted on the boy thereby. When interrogated as to whether he would have asked that the money be taken away from him he said "No, I wouldn't take the money—to be taken away from him."

Not only does it appear that the father is not in a position to recover the past wages of his son because he has not performed the correlative duties entitling him thereto, but it would seem that there was an emancipation from the father's control. Such can be shown not only by express agreement, but also by conduct from which it is implied. [McMorrow v. Dowell, 116 Mo. App. 289, 298.] Whether there has been an emancipation is usually a question of fact, but in this case the facts showing emancipation come from plaintiff himself, and there is no question of fact to be determined, but only a question of law, namely, whether what the father did was, in law, an emancipation of the boy and a relinquishment of his wages. [Iroquois Iron Co. v. Industrial Commission, 128 N. E. 289.] It is not necessary that the father, in order to give his son the privilege of having the fruits of his own labor, or in order to release all claim on the part of the parent thereto, should do so in any formal or contractual way. [Dierker v. Hess, 54 Mo. 246.] The intention to release is all that is necessary and, though it must be clearly established, it may be inferred from conduct alone, [Zongker v. Peoples, etc., Mercantile Co., 110 Mo. App. 332, 389.] [See, also, Ream v. Watkins, 27 Mo. 516.] The defendant employed the boy in good faith upon the assumption, justified by the circumstances, that he had been emancipated, all of which appears from the plaintiff's testimony. The evidence is that all the wages he earned were paid to him, and that after his first period of employment with defendant and during the succeeding period when he was not working for it, he applied at times to the men working for defendant and they lent him money which, as soon as he got work, he earned and repaid. There was no evidence that defendant knew the boy had left his aunt's home without leave; and while the plaintiff says he did not know where the boy was working, yet he does reveal that he did know he was working for the defendant Bridge Company. It is true, one who employs a minor and pays his wages to him does so at his peril,

Central Mo. Trust Co. v. Smith.

but if the defendant had made investigation, the circumstances thereby disclosed would have justified it in thinking the boy was emancipated. And where there is an emancipation and the child during that time has entered into lawful contractual rights, the parent cannot, by revoking the emancipation, abrogate the child's contract or affect the rights of the contracting parties acquired thereunder. [19 Ann. Cases, 331 note.]

Whether the father in the case at bar could have revoked his emancipation and relinquishment of his son's earnings is a matter we need not enter into. The fact is that he did not do so. This is not a suit against the defendant for the death of the son whereby the father is deprived of the right to the boy's *future* earnings until his majority. It is for the *past* wages of the boy, earned by him during the time when the father had not done anything for years to entitle him to any claim on his son's earnings, when he had no intention of making any claim thereon, did not think he was entitled thereto, and would not have taken them so long as it was a taking of the earnings away from the boy himself. But now that the boy is dead and an assertion of parental rights will not take anything from him, the father proposes to assert such rights and compel the defendant to again pay the son's wages to him, when for years he has done nothing entitling him to those rights. We do not think he should be allowed to do this.

The judgment is reversed. All concur.