## SPURGEON v. MISSION STATE BANK.

### No. 13102.

Circuit Court of Appeals, Eighth Circuit.

Nov. 6, 1945.

Rehearing Denied Dec. 3, 1945.

Donald W. Johnson, of Kansas City, Mo. (E. E. Thompson, of Kansas City, Mo., on the brief), for appellant.

A. C. Popham, of Kansas City Mo. (Sam Mandell and Cowgill & Popham, all of Kansas City, Mo., on the brief), for appellee.

Before WOODROUGH, JOHNSEN, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

The appellant, a minor, brought this action in a Missouri State court against the appellee, a Kansas bank, engaged in business at Mission, Kansas. The bank removed the action to a Federal court in Missouri on the ground of diversity of citizenship. Appellant's motion to remand was denied. A trial in the District Court resulted in a judgment in favor of appellant. This appeal raises only the question of the jurisdiction of the Federal court. Jurisdiction depends upon whether the minor appellant was, under the facts in this case, capable of acquiring a domicil of his choice, and upon whether his domicil was in Kansas at the times material on the question for decision.

The facts are not in dispute. Appellant's mother and stepfather resided and maintained their home near Queen City in Schuyler County, Missouri. Until shortly before the present action was brought, the appellant lived with his parents, although for three and one-half years the greater part of his time had been spent away from their home. In December 1942, when appellant had attained the age of eighteen years and five months, he left the home of his parents, with their consent to make his way in the world. He had no definite destination in mind. It was understood by him and his parents that he left for the purpose of securing permanent employment wherever it might be found. At the time of his departure from home appellant had finished two years of high school, had spent one year in a Civilian Conservation Camp, and for many years had been accustomed to work for others for compensation. His reputation for industry and integrity was good.

On leaving the home of his parents, appellant went to Kansas City, Missouri, where he remained until he secured employment in a moving picture theatre in Mission, Kansas. He then removed to Mission, as he testified on the motion to remand, for the purpose of making that place his permanent home, and with a view to becoming a citizen of Kansas. Appellant resided continuously in Mission from the time of his removal there in January 1943 until he was called into the army in March 1943. Throughout that period he remained in the employ of the moving picture theatre. Shortly after his removal from Kansas City, Missouri, to Mission, Kansas, he wrote his mother requesting her to send him such of his personal belongings as he had not taken with him on his departure from home, accompanying his letter with money to pay the necessary transportation charges. In a letter to his mother after his entrance into the army, he wrote that his employer in Mission, Kansas, had promised to reemploy him on his discharge from the army, and that the many friends he had made in Mission assured him that he might have a home there as long as he desired. He also advised his mother that he had not maintained communication with his acquaintances in Queen City, Missouri, and that the only persons he missed in the army were the friends he had made in Mission.

Thirteen days after appellant had moved from Kansas City to Mission, this action was brought in the Missouri State court to recover damages which appellant claimed to have sustained as the result of his alleged false arrest and imprisonment by the bank. Appellant's contention is that the facts stated show that he had been completely emancipated by his parents; that, as an emancipated minor, he was capable of selecting a domicil of his choice; and that at all times important to decision here he was a resident of Kansas, which is also the residence of the appellee bank.

Whether the appellant was an emancipated minor at the time of his departure from the home of his parents is a question controlled by Missouri law. Under Missouri law, emancipation of a minor need not be evidenced by any formal contract. Direct proof is not required. The emancipation of a minor is never presumed. The party relying upon it must

establish it. Brosius v. Barker, 154 Mo. App. 657, 136 S.W. 18; Singer v. St. Louis, K. C. & C. Ry. Co., 119 Mo.App. 112, 95 S.W. 944. As against his parents an emancipated minor is entitled to the fruits of his labor and compensation for personal injuries, Beebe v. Kansas City, 223 Mo.App. 642, 17 S.W.2d 608, 612, upon the principle that emancipation is the renunciation of parental duties to the minor and a surrender of the parents' right to the minor's services. See also Ream v. Watkins, 27 Mo. 516, 72 Am.Dec. 283; Dierker v. Hess, 54 Mo. 246, where it is held that where a minor is permitted to work for himself and claim and enjoy his own wages, he may purchase and own property independent of his parents' control, even when he continued to live in his father's home; and Evans v. Kansas City Bridge Co., 213 Mo.App. 101, 247 S.W. 213, in which a father was held not entitled to recover past wages paid his deceased minor son, where the father had not performed his correlative parental duties entitling him thereto.

"Generally the father, as head of the family, is entitled to the services of his minor children, or to their earnings, if by his permission they are employed by others. He is also under obligation to support his children during their minority. The right and obligation are correlative, and where the father neglects or refuses to support his child, denies him a home, or abandons him, so that he is obliged to support himself, the law implies an emancipation, and recalls the father's right to the child's services and earnings." Swift & Co. v. Johnson, 8 Cir., 138 F. 867, 872, 873, 1 L.R.A.,N.S., 1161. This case involved an action to recover for the death of a minor, prosecuted for the benefit of the father who had abandoned the child. The court reached the conclusion that there had been an emancipation of the minor and recovery could only be for nominal damages.

A leading Missouri case upon the question under consideration is Brosius v. Barker, supra, in which the court held that where a minor "who is physically and mentally able to take care of himself, has voluntarily abandoned the parental roof and turned his back to its protection and influence, and has gone out to fight the battle of life on his own account, the parent is under no obligation to support him." [154 Mo.App. 657, 136 S.W. 20.] The case involved an action against a father to re-

cover the cost of medical and hospital treatment for his minor son who had left his home in Missouri to make his way in the world. The action was defended on the ground that the minor had been emancipated and that the father was not liable. In discussing the question of emancipation the court said, 136 S.W. 19, 20:

"The general rule is that the father is under a legal obligation to maintain and support his infant child. The child comes into the world absolutely helpless and incapable of protecting itself. No creature is more helpless at birth than the human being, yet in some jurisdictions the courts hold that parents who have bestowed life, and have brought into the world these helpless creatures, are under no legal obligation to support or preserve them during the dependent period of their existence. Kelley v. Davis, 49 N.H. 187, 6 Am.Rep. 499; Gordan v. Potter, 17 Vt. 348. But the great weight of modern authority repudiates this doctrine and declares it to be opposed to natural sense of justice. Huke v. Huke, 44 Mo.App. 308; Porter v. Powell, 79 Iowa [151], 152, 44 N.W. 295, 7 L.R.A. 176, 18 Am.St.Rep. 353; Guthrie [County] v. Conrad, 133 Iowa 171, 110 N.W. 454; Rounds Bros. v. McDaniel, 133 Ky. 669, 118 S.W. 956 [134 Am.St.Rep. 482, 19 Ann. Cas. 326]; Ream v. Watkins, 27 Mo. 516, 72 Am.Dec. 283; Philpott v. [Missouri Pac.] R. Co., 85 Mo. 164; Mott v. Purcell, 98 Mo. 247, 11 S.W. 564; 29 Cyc. 1675; Johnson v. Gibson, 4 E.D. Smith, N.Y. 231; Ramsey v. Ramsey, 121 Ind. 215, 23 N.E. 69, 6 L.R.A. 682; Kubic v. Zemke, 105 Iowa 269, 74 N.W. 748; Gotts v. Clark, 78 Ill. 229.

"Complete emancipation is an entire surrender of all the rights to the care, custody, and earnings of the child, as well as a renunciation of parental duties. Lowell v. Newport, 66 Me. 78. And the test to be applied is that of the preservation or destruction of the parental and filial relations. Sanford v. Lebanon, 31 Me. 124.

"There are two kinds of emancipation, express and implied. Express emancipation takes place when the parent agrees with his child, who is old enough to take care of and provide for himself, that he may go away from home and earn his own living, and do as he pleases with the fruits of his labor. Implied emancipation is where the parent, without any express agreement by his acts or conduct, impliedly consents that his infant child may leave

home and shift for himself. Rounds Bros. v. McDaniel, supra; Lowell v. Newport, supra.

"Emancipation was in early time evidenced and perfected by the formality of an imaginary sale. Subsequently this was abolished, and the simple process of manumission before a magistrate substituted. Everett v. Sherfey, 1 Iowa [356], 358. In Louisiana the matter is expressly regulated by statute. But in the absence of statute the rule now is that emancipation need not be evidenced by any formally executed instrument, or by any record act, but is a question of fact which may be proven from circumstances, and direct proof is not required. Canovar v. Cooper, 3 Barb., N.Y. 115; Benson v. Remington, 2 Mass. [113], 115; Everett v. Sherfey, supra.

"The question of emancipation must be determined upon the peculiar facts and circumstances of each case, and nothing more than general rules can be declared which will be applicable in all cases. Inhabitants of Carthage v. Inhabitants of Canton, 97 Me. 473, 54 A. 1104. Emancipation is never presumed, and, if relied upon as a defense, must be proven. Singer v. [St. Louis, K. C. & C.] R. Co., 119 Mo.App. 112, 95 S.W. 944."

■■ The District Court based its finding that the appellant was not emancipated upon the statement made by his mother in her deposition, read on the motion to remand, that she did not want the appellant to leave home; but, when the whole deposition is read, it is clear that whatever her wishes were she consented to the son's departure from the parental roof to make his way in the world. This is also the only conclusion that can be drawn from the testimony of the stepfather. It was, of course, natural that appellant's mother should have preferred him to remain at home with her, but, so long as she agreed with her son that he might leave to make his own way in the world, her natural preference is not significant on the question of his emancipation. It is important to note that there was nothing in the agreement between the parents and the son in this case which in any way limited the son in the choice of his place of residence. He was free to go where he wished, and, if capable of making a choice, to acquire a new domicil when and where necessary or convenient to the success of his effort to make his own way and to support himself. Implied in this agreement between the minor and his parents was a complete renunciation of the parental right to control the minor's domicil.

■ Since appellant was emancipated by an agreement between himself and his parents, the questions remain whether, as an emancipated minor, he was capable of acquiring a domicil of his choice, and whether, in fact and law, appellant did acquire a domicil in Kansas. Clearly, both questions must be answered in the affirmative. The appellant in this case had reached an age of discretion, and established his competence to care for himself before he departed from the home of his parents. In such circumstances modern authorities, preferring reality to fiction, sustain the right of an emancipated minor to acquire a domicil of his choice. "An emancipated child can acquire a new domicil of choice. Since he has to provide for himself, he should have power to choose his home." Restatement of Conflict of Laws, § 31. To the same effect, 1 Beale, Conflict of Laws, §§ 30.1, 31.1; Goodrich on Conflict of Laws, § 34; Dobie, Federal Procedure, p. 191. See also 30 Columbia Law Review 703. There are no Missouri decisions directly on the point. On principle, however, the Missouri cases cited above point to agreement with the modern rule.

The cases in other States are in conflict. Where the right of an emancipated minor to select a domicil of his choice is denied, decision is usually based on the fact that a minor, being non sui juris, is legally incapable of effecting a change of domicil. Cases so holding are Gulf, C. & S. F. R. Co. v. Lemons, 109 Tex. 244, 206 S.W. 75, 5 A.L.R. 943; Delaware, L. & W. R. Co. v. Petrowsky, 2 Cir., 250 F. 554; and Wiggins v. New York Life Ins. Co., D. C., 2 F.Supp. 365. Cases recognizing the rights of the minor are Bjornquist v. Boston & A. R. Co., 1 Cir., 250 F. 929, 5 A. L.R. 951; Woolridge v. McKenna, C.C. Tenn., 8 F. 650; Russell v. State, 62 Neb. 512, 87 N.W. 344; and Cohen v. Delaware, L. & W. R. Co., 150 Misc. 450, 269 N.Y.S. 667. The cases are noted in 5 A.L.R. 949. As stated in Goodrich on Conflict of Laws, § 34(b), recognition of the right of an emancipated minor to choose a domicil "merely gives legal effect to what is already the fact."

■ Unquestionably, the minor in this case acquired a domicil in Kansas. To acquire a domicil of choice, the law re-

quires the physical presence of a person at the place of the domicil claimed, coupled with the intention of making it his present home. When these two facts concur, the change in domicil is instantaneous. Intention to live permanently at the claimed domicil is not required. If a person capable of making his choice honestly regards a place as his present home, the motive prompting him is immaterial. Restatement of Conflict of Laws, §§ 15, 22.

The judgment of the District Court is reversed with directions to remand this action to the State court.