Mary Ann HOLMES and Garry Holmes, Appellants,

v.

John SOPUCH and St. John's Mercy Medical Center, a corporation, Appellees.

No. 80–1640.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 20, 1981.

Decided Jan. 29, 1981.

Daniel E. Wilke, Carter, Brinker, Doyen & Kovacs, Clayton, Mo., for appellee St. John's Mercy Medical Center.

Kortenhof & Ely, Brent W. Baldwin, Joseph M. Kortenhof, St. Louis, Mo., for appellee Sopuch.

Rex Carr, David J. Letvin, Cohn, Carr, Korein, Kunin, Schlichter & Brennan, East St. Louis, Ill., for appellants.

Before STEPHENSON, HENLEY and ARNOLD, Circuit Judges.

PER CURIAM.

The sole issue in this appeal is whether the district court[1] correctly dismissed the Holmes' medical malpractice lawsuit for lack of diversity jurisdiction. We affirm the district court's dismissal.

On February 27, 1979, Mary Ann Holmes and Garry Holmes filed a lawsuit in the Eastern District of Missouri against John Sopuch, M.D. and St. John's Mercy Medical Center. The complaint essentially alleged that defendants' negligent treatment of Mary Ann Holmes, in April of 1977, resulted in various direct damages to Mary Ann and indirect damages to her husband Garry. The complaint further alleged that the Holmes were Ohio citizens and that defendants were both Missouri citizens for purposes of diversity jurisdiction.

Dr. Sopuch moved to dismiss the suit for lack of diversity jurisdiction on January 29, 1980. Sopuch's motion to dismiss was referred to United States Magistrate David D. Noce who held an evidentiary hearing on February 25, 1980. Magistrate Noce filed a memorandum which recommended that the case be dismissed because the parties were not diverse in citizenship. Magistrate Noce discussed the relevant jurisdictional circumstances in great detail and our independent examination of the record including the trial transcript and briefs confirms his factual findings.

The record discloses that Garry Holmes has been an employee of the Defense Mapping Agency (DMA) in St. Louis since 1967. He and his wife Mary Ann have resided in the St. Louis area since 1965. In June of 1978, and upon his application, the DMA selected Garry Holmes to participate in a one-year educational program at Ohio State University in Columbus, Ohio. Holmes testified that he intended to stay in Columbus longer than one year in order to earn a masters degree, but the DMA envisioned only a year's absence and did not expect or require him to earn a masters degree. Mary Ann and Garry Holmes moved to Columbus in September of 1978, and returned to their home in St. Louis in September of 1979. They originally purchased their St. Louis home in 1970. On July 13, 1978, they leased their home to other persons for a term of one year beginning August 30, 1978. While in Ohio, the Holmes leased an apartment for a term of one year beginning August 30, 1978.

Magistrate Noce concluded that the Holmes did not establish a new domicile in Ohio and, as mentioned earlier, recom-

---

1. The Honorable Edward L. Filippine, United States District Judge for the Eastern District of Missouri.

mended that the suit be dismissed for lack of diversity jurisdiction. The magistrate specifically found that "[a]t no time did the Holmes form an intention to remain in Ohio after the university study ended." The evidence supports this finding.

On June 23, 1980, the district court filed a brief order which adopted the magistrate's recommendation. The district court rejected the Holmes' contention that Magistrate Noce applied an unduly high standard of intention to remain at the new Ohio residence and concluded that: (1) the standard applied by the magistrate was simply whether the Holmes had the intention to reside in Ohio indefinitely (not permanently); and (2) the magistrate correctly concluded that the Holmes failed to establish that they changed their domicile to Ohio because they did not contemplate residing in Ohio any longer than was required for Garry Holmes to complete his schooling.

On appeal to this court, the Holmes do not challenge the district court's factual findings. Instead, appellants contend that the district court applied an incorrect legal standard to the jurisdictional facts when it determined appellants never established a new domicile in Ohio. Appellants maintain the district court required too much of them and that the correct test of domicile mandated in *Spurgeon v. Mission State Bank*, 151 F.2d 702, 705–06 (8th Cir.), *cert. denied*, 327 U.S. 782, 66 S.Ct. 682, 90 L.Ed. 1009 (1945), was not applied to their circumstances. *Spurgeon* states:

> To acquire a domicile of choice, the law requires the physical presence of a person

at the place of the domicile claimed, coupled with the intention of making it his present home. When these two facts concur, the change in domicile is instantaneous. Intention to live permanently at the claimed domicile is not required. If a person capable of making his choice honestly regards a place as his present home, the motive prompting him is immaterial.

*Id.* (citation omitted).

Appellants charge that the district court erroneously required them to establish an intent to reside indefinitely or permanently in Ohio in order to legally effect a change in domicile and argue that they: (1) intended to abandon their Missouri domicile; (2) had no specific intent to return to Missouri; (3) left their Missouri domicile with the intent to live in Ohio for the present time and "then to probably relocate at some unspecified and unknown place"; and (4) returned to Missouri only because of unforeseen circumstances.

■ In our view, the district court applied the proper legal standard to determine whether the Holmes effected a change of domicile. Although the authorities sometime contain imprecise language, a change in domicile requires only the concurrence of (1) physical presence at the new location with (2) an intention to remain there indefinitely, or the absence of any intention to go elsewhere. *See, e. g.,* 13 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3613, at 728–29 (1975).[2] A person must intend to reside somewhere indefinitely with no present or fixed intent

---

2. A fair reading of other relevant authority confirms the accuracy of the legal test stated in text above. *See, e. g., Williamson v. Osenton*, 232 U.S. 619, 624, 34 S.Ct. 442, 443, 58 L.Ed. 758 (1914) (the essential fact that raises a change of abode to a change of domicile is the absence of any intention to live elsewhere or the absence of any present intention of not residing permanently or indefinitely in the new abode); *Mitchell v. United States*, 88 U.S. (21 Wall.) 350, 352–53, 22 L.Ed. 580 (1874) (domicile is residence at a particular place accompanied with positive or presumptive proof of an intention to remain there for an unlimited time; there are two requirements for a change in domicile: residence in the new locality and the intention to remain there); *Rogers v. Bates*, 431

F.2d 16, 18 (8th Cir. 1970) (quoting the *Spurgeon* test set forth in text above); *Bruton v. Shank*, 349 F.2d 630, 633 (8th Cir. 1965) (*Spurgeon* test); *Janzen v. Goos*, 302 F.2d 421, 425 (8th Cir. 1962) (*Spurgeon* test); *Ellis v. Southeast Construction Co.*, 260 F.2d 280, 281 (8th Cir. 1958) (*Spurgeon* test); *Maple Island Farm, Inc. v. Bitterling*, 196 F.2d 55, 58 (8th Cir.), *cert. denied*, 344 U.S. 832, 73 S.Ct. 40, 97 L.Ed. 648 (1952); C. Wright, Law of Federal Courts § 26, at 100 (3d ed. 1976) (a change of domicile requires two elements: (1) a citizen must take up residence at the new domicile, and (2) he must intend to remain there "for the time at least"; an intention to remain permanently at the new domicile is not required and it is enough if the citizen intends to make the new

to move on upon the happening of a reasonably certain event. *Id.* at p. 733–36. Even *Spurgeon v. Mission State Bank, supra*, does not stress the requirement of an intent to remain somewhere indefinitely. Application of this two-pronged test to particular facts is often difficult, but we are convinced that the trial court correctly determined that the Holmes did not change their domicile from Missouri to Ohio for diversity jurisdictional purposes.

 Garry Holmes testified that after finishing his studies at Ohio State he would obtain the best position available with the DMA and that he never intended Ohio to be his permanent home. Moreover, there is no DMA facility in Ohio which Holmes might have chosen upon the completion of his studies. Holmes also testified that he might have chosen to return to the St. Louis DMA facility. Although Holmes' testimony revealed that he had no specific intent to return to Missouri when he completed his studies at Ohio State, it is clear he had no intent to remain in Ohio beyond the educational period. Like many out-of-state students, therefore, Holmes did not establish a new domicile in Ohio because he intended to remain there not for an indefinite period but only for as long as his studies required. *See generally,* 13 Wright, Miller & Cooper, *supra* § 3619, at 751 (out-of-state students generally have been viewed as temporary residents who are located in the state only for the duration and for the purpose of their studies); *Id.* § 3613, at 733–36 (an individual must intend to remain at the new home for an indefinite period; discussion of an "indeterminate" or "floating" intention to return at some future time).

The magistrate stated the legal test of domicile as follows: "A person acquires a domicile by locating his residence or being physically present in a specific place with the intention of residing in that place indefinitely or with the intention of making that place his home." The district court properly recognized that the Holmes were not required to show an intent to reside in Ohio permanently but rather to show an intent to reside in Ohio *indefinitely.*

 Once acquired, a person's domicile persists until a new one is acquired; it is presumed to continue until it is shown to have changed. *Janzen v. Goos*, 302 F.2d 421, 425 (8th Cir. 1962). The Holmes failed to show that they changed their domicile to Ohio because they never established an intent to reside in Ohio indefinitely.

 Ultimately, "[a] determination of citizenship for purpose of diversity is a mixed question of law and fact, but mainly fact, which may not be set aside by an appellate court unless clearly erroneous." *Rogers v. Bates*, 431 F.2d 16, 18 (8th Cir. 1970).

We are satisfied that the record amply supports the district court's conclusion that the Holmes failed to establish a new domicile in Ohio. We accordingly affirm the district court's dismissal of the Holmes' lawsuit for lack of diversity jurisdiction.

Affirmed.

---

state his home and that he has no present intention of going elsewhere); West's Federal Practice Manual § 7506 (1970) (domicile requires the concurrence of two elements: (1) actual residence within a state and (2) an intention that it be his principal residence for an indefinite period). *See generally Russell v. New Amsterdam Casualty Co.*, 325 F.2d 996, 998 (8th Cir. 1964) (general rules repeated).