## Commonwealth ex rel. Larsen, Appellant, *v.* Larsen.

Argued June 13, 1967.  Before ERVIN, P. J., WAT-KINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ. (WRIGHT, J., absent).

*Ervin S. Fennell, Jr.*, with him *Maine and Fennell*, for appellant.

*R. Edward Ferraro*, for appellee.

OPINION BY SPAULDING, J., September 15, 1967:

This appeal challenges the adequacy of an order of $1275.00 per year, entered against defendant by the court below, for the support of a 19 year old son in college.

James Larsen became 18 years of age on December 8, 1965. In September, 1966 he enrolled as a full time premedical student at Washington and Jefferson College in Washington, Pennsylvania, where his tuition and other expenses total about $3600.00 per year. The defendant, James' divorced father, was at that time under a court order of $2600.00 per year for his son's support. At a hearing held on October 15, 1966 James, by his mother as relatrix, sought to have this order increased to cover his college expenses, while defendant sought to have the order reduced. The defendant, who had never agreed to provide James with an education at any college, particularly took issue with the need for his son to attend such an expensive institution, and testified that according to his personal investigations the son could obtain an adequate, if not superior, education at Pennsylvania State University for a cost of only $1275.00 per year. Based on this testimony, the court below held that, under the circumstances, the defendant should provide "only such reasonable sum as would allow for a proper education [for] said son in a wholly acceptable university, such as Pennsylvania State University," and set its order accordingly at the rate of $106.25 per month. Appellant contends that the trial court abused its discretion in the amount fixed for support for college and in basing this amount

on hearsay testimony without regard to actual needs of the son. We do not agree.

"The law, apart from statute has come to recognize that paternal duty involves, in addition to provision for mere physical needs, such instruction and education as may be necessary to fit the child reasonably to support itself [sic] and to be an element of strength, rather than one of weakness, in the social fabric of the state." *Commonwealth ex rel. Ulmer v. Sommerville,* 200 Pa. Superior Ct. 640, 643, 190 A. 2d 182 (1963).

In *Ulmer* we stated that, under certain circumstances, a father may be required to support a child attending college, whether or not the father has agreed to do so. For such an order to be justified, the child should be able and willing to pursue successfully his course of studies, and, in addition, "the father should have sufficent estate, earning capacity or income to enable him to pay the order without undue hardship." *Id.,* at 644. In the instant case, the son's willingness and ability are not in issue, nor have we any doubt that defendant can pay some portion of the cost of the son's education without undue hardship. The question for our consideration is the extent to which a father is obliged, under present circumstances, to support a child attending an expensive private college when an adequate but less expensive education is available elsewhere.

We are reluctant to formulate a rule which would, in all cases, prevent a child from attending the college of his choice simply because it is more expensive than the state-supported university. On the other hand, we do not believe that the child should have absolute discretion in selecting a college, thereby unilaterally increasing the father's support obligation. The determination of whether such an additional burden should be imposed on the father is a matter for the trial court. *Commonwealth ex rel. Raitt v. Raitt,* 203 Pa. Superior Ct. 226, 229, 199 A. 2d 512 (1964).

The purpose of a support order is the welfare of the child and not the punishment of the father. It must be fair, not confiscatory in amount and intended to provide a reasonable allowance for support, considering the property, income and earning capacity of the father, and the station of life of the family. *Commonwealth ex rel. Shumelman v. Shumelman,* 209 Pa. Superior Ct. 87, 89, 223 A. 2d 897 (1966); *Commonwealth v. Camp,* 201 Pa. Superior Ct. 484, 193 A. 2d 685 (1963). It is within the discretion of the trial court to determine under all the circumstances what is just and equitable to the child and to the father. *Commonwealth ex rel. Raitt v. Raitt, supra; Commonwealth ex rel. Silverman v. Silverman,* 180 Pa. Superior Ct. 94, 98, 117 A. 2d 801 (1955). "The duty of a parent to provide a college education for a child is not as exacting a requirement as the duty to provide food, clothing and shelter for a child of tender years unable to support himself. . . . No mathematical rule can be formulated to determine how extensive the hardship upon a father must be before it will excuse him from supporting a child in college. It must be a matter of judgment in a field where the judgments of sincere and advised men differ materially. . . . To determine whether the order is justified, an important consideration is the estate, the earning capacity and the income of the defendant. This, however, is not the sole criterion. There are other circumstances to be considered." *Commonwealth ex rel. Ulmer v. Sommerville, supra,* at 644-645.

Thus, in a case of this nature, the court must first ascertain what advantages are offered by the more expensive college in relation to the child's individual needs, aptitude, ability, and the child's anticipated vocation. It must then weigh these advantages against the increased hardship that would be imposed on the father to determine whether the additional expense is reasonable under the circumstances. We realize that

a judge who sees and hears the witnesses in a case such as this is in a better position than this Court to decide this problem and our function on appeal, therefore, is merely to determine whether the lower court is chargeable with an abuse of discretion. *Commonwealth ex rel. Shumelman v. Shumelman, supra,* at 89-90; *Commonwealth ex rel. Pitucci v. Pitucci,* 200 Pa. Superior Ct. 591, 593, 189 A. 2d 912, 913 (1963).

The defendant, a 67 year old medical doctor, has been separated from his former wife since one month before James' birth in 1947, and has had almost no contact with his son since that time. For the past 10 years he has paid a court order of $2600.00 per year for the child's support and, since 1947, these payments have totaled more than $51,000.00.

At a hearing held on December 27, 1965 it was disclosed that although defendant was formerly director of the X-ray departments of two hospitals in DuBois, Pennsylvania, he had recently lost one of these positions because of his advanced age. He has continued to work at the Maple Avenue Hospital and earns a gross annual income of between $25,000.00 and $29,-000.00. It is questionable how long defendant can continue to earn this amount since he is already past the age of retirement. There is also testimony that he is afflicted with diabetes and a noticeable loss of hearing, and that he is not eligible for any pension or social security benefits. With a view towards providing security in his declining years, he has maintained a private practice, and has invested in mutual funds, now valued at more than $105,000.00, producing an annual income of between $6000.00 and $7000.00. Defendant also owns a home, situated on 100 acres of land, where he employs a housekeeper and a handyman. He has never remarried and has no other children to support. Although the above facts indicate that defendant's present financial condition would probably enable him to

pay an amount greater than the present order, the court was justified in also considering that defendant would be 70 years of age by the time James is expected to graduate, and that increased payments might well jeopardize his financial security.

James' mother is employed as a physical therapist and earns a gross annual income of $6000.00 with an annual net salary of more than $4100.00. She has two other children by a prior marriage, who are presently attending college. Their educational expenses are amply provided for by a trust fund. In the summer of 1964, she took James on a pleasure trip to Europe, spending approximately $3000.00 or $4000.00 of her own money.

The trial court found that with proper management of the $51,000.00 paid by the defendant together with her own funds, the mother could have provided James with whatever college education he may have desired. Although we may not punish a child for his mother's improvidence, the above information is nevertheless important in considering the extent of the mother's separate earnings, which is one of the relevant circumstances in this case. *Commonwealth ex rel. Decker v. Decker*, 204 Pa. Superior Ct. 156, 161, 203 A. 2d 343 (1964); *Commonwealth ex rel. Borrow v. Borrow*, 199 Pa. Superior Ct. 592, 595, 185 A. 2d 605 (1962).

The son's choice of Washington and Jefferson College seems to have been a unilateral decision, made without consultation or agreement with his father, and apparently also without any investigation or application to any other college. Despite his testimony that the College offered the advantages of smaller classes and closer contact between students and their instructors, it was reasonable for the court to conclude that this did not justify imposing such an additional burden on the defendant.

However, we find that an additional $60.00 per year is required[1] to make the amount of the support order conform to its stated ends, and we therefore modify that order to $1335.00 per year or $111.25 per month. It is only in exceptional cases that this Court may amend a verdict, and such power is rarely exercised unless to make the corrected verdict conform to the obvious intention of the court below. *Gaspero v. Gentile,* 160 Pa. Superior Ct. 276, 50 A. 2d 754 (1947).

Affirmed as modified.

[1] Due to a recently announced increase to be effective September 1, 1967.