## Paul v. Von Bargen, Jr.

*Edward H. Fackenthal*, for plaintiff.
*Anthony L. Differ*, for defendant.

GROSHENS, P. J., March 5, 1969.—Plaintiff, Dorothy J. Paul, former wife of defendant, filed a complaint in equity to recover funds allegedly due under a 1950

support agreement. Specifically she seeks recovery for funds already expended for their son Drew's attendance at Hobart College in Geneva, New York; $81.25 for Drew's final child support payment under a 1961 support order, and Drew's future college expenses as they accrue. Defendant answered the complaint denying that the 1950 agreement was still in effect, and stated that the parties had orally agreed on an arrangement for college expenses. This assertion was denied by plaintiff. After a hearing and oral argument, the matter is now before us for disposition.

## FINDINGS OF FACT

1. Plaintiff is Dorothy J. Paul who resides at 758 Hickory Lane, Berwyn, Montgomery County, Pa.

2. Defendant is Frank E. Von Bargen, Jr. who resides at 191 Lantern Lane, King of Prussia, Montgomery County, Pa.

3. The parties were married on December 18, 1943, and divorced in April, 1950.

4. During their marriage two children were born, Derrick Paul Von Bargen, born on February 25, 1947, and Drew Phillip Von Bargen, born on December 15, 1948.

5. Prior to their divorce the parties on March 3, 1950, entered into an agreement which provided that defendant would pay 25 percent of his net pay for the benefit of the children of the parties, and that "the Husband agrees to pay for the college education of said children." No guidelines for such payment were set forth.

6. This original obligation has been modified since 1950. In particular, by agreement of the parties, on September 18, 1959, defendant's obligation was reduced from 25 percent of his taxable income to 20 percent thereof.

7. Defendant's compliance under the separation agreement was tardy and unreliable.

8. Subsequently plaintiff decided to institute support proceedings in the Court of Quarter Sessions of Montgomery County, which resulted in an agreed order on May 1, 1960, whereby defendant was to pay $135 per month for the support of the two children, approximately the same commitment as the amended support agreement.

9. In November 1961, a modified court order was entered whereby defendant's obligation was increased from $135 per month to $162.50 per month.

10. The parties agreed at trial that they had discussed the college education of the children at the preliminary hearing prior to the entry of the November, 1961 order, but there is conflicting testimony regarding what was agreed on.

11. On March 15, 1965, the older of the two boys, Derrick, began living with defendant and consequently the support being paid was reduced by one-half to $81.25 per month.

12. In June of 1967 the younger of the two children, Drew, graduated from high school. At that time, defendant discontinued making support payments at a time when he was in arrears $81.25. Drew then entered Hobart College, Geneva, New York in September of 1967. Defendant was not consulted prior to Drew's enrollment in Hobart.

13. Tuition, and room and board expenses at Hobart will be at the minimum rate of $1,575 per semester, or $3,150 per year. Tuition at a nearby State supported institution would not exceed $600.

14. Defendant through no fault of his own is presently not employed. Although he was earning $28,000 when his employment was terminated, as recently as 1963 his earnings were only $13,000. This disparity was the result of a promotion in 1966.

15. Defendant is presently seeking employment at the minimum rate of $20,000 per year.

16. The home in which defendant and his present wife reside has a value of from $25,000 to $28,000 and is encumbered by a $19,000 mortgage.

17. Defendant presently has debts amounting to $6,000 in addition to the mortgage on his home.

18. Defendant also supports a second wife and 12 year old daughter, both of whom reside with defendant.

## DISCUSSION

There are two questions to be answered in the present case. First, whether defendant is bound to pay Drew's college expenses under the 1950 support agreelent. And, if so, to what extent is he liable for such expenses.[1]

Defendant claims that the court order (1960), and a modified court order (1961) have superceded the original agreement, and that the conduct of both he and plaintiff is proof of their intent to rescind the original agreement. Although we agree that rescission may be evidenced by the conduct of the parties to the agreement, we do not think the facts of this case warrant such a conclusion.

It must be remembered that defendant's performance under the original agreement was unreliable. Plaintiff logically, in an effort to secure dependable performance, decided to institute support proceedings, which resulted in an agreed order on May 1, 1960. Under this order defendant was to pay $135 per month for the two children, approximately the same commitment he had under the amended support agreement. Plaintiff had no intention of abandoning her children's rights under the 1950 agreement. She

---

[1] There is also one minor issue. Plaintiff contends defendant is one payment, $81.25, in arrears pursuant to the 1961 modified support order. We agree with this contention.

merely wanted pressure put on defendant so that he would fulfill his parental duties. Thus the support order is not inconsistent with the original agreement, but simply a more forceful application of its provisions.

In 1961 the support order was increased to $162.50 per month. Defendant contends that he agreed to this increase only because plaintiff agreed to release him of his obligations under the 1950 separation agreement. The evidence in this area is conflicting. But, it is difficult to believe that plaintiff would surrender her children's rights to a college education for an increase in support payments of only $115 per year per child. The children were 12 and 14 years of age at this time, and it is not reasonable to think that a mother would casually trade away so valuable an asset as a college education for such a minor increase in support benefits. While there has been mentioned a fund which plaintiff's husband was supposed to have set up for the college educations of the children, the evidence shows only that plaintiff's husband did have a savings fund, but that it was basically a pension fund. The Pauls used this money for emergencies, such as sewer repair work, but it was essentially for their old age when Mr. Paul would retire. The fact that Mr. Paul magnanimously used some of his retirement money to help Drew attend Hobart does not mean such moneys were set up for such a reason, and is no indication that plaintiff thought the 1950 support agreement moribund. She repeatedly requested that defendant honor his obligation, but she was either refused or ignored. In fact, defendant even refused to pay the final support payment under the 1961 court order. We conclude that the 1950 agreement has never been rescinded, and that Drew is entitled to its benefits.

However, the agreement merely provides that the defendant "agrees to pay for the college education of

said children." No explanation accompanies this provision. Such a provision generates the same problem as recent Pennsylvania case law which requires that the father, if able, pay for his children's college education, even in the absence of a written agreement. See Commonwealth ex rel. Ulmer v. Sommerville, 200 Pa. Superior Ct. 640 (1963). In both instances the real issue is to what extent will the father be held liable for college expenses. Should the court permit a youngster to choose any college he desires, without consulting his father, and then compel the father to finance the entire cost of his son's education? We think not.

This case is markedly similar to Commonwealth ex rel. Larsen v. Larsen, 211 Pa. Superior Ct. 30 (1967), where the court stated at page 33:

*"The question for our consideration is the extent to which a father is obliged,* under present circumstances, to support a child attending an expensive private college, when an adequate but less expensive education is available elsewhere.

"We are reluctant to formulate a rule which would, in all cases, prevent a child from attending the college of his choice simply because it is more expensive than the state-supported university. On the other hand, *we do not believe that the child should have absolute discretion in selecting a college, thereby unilaterally increasing the father's support obligation."* (Italics supplied.)

Defendant, a 46 year old marketing executive, is reasonably assured of a $20,000 a year income. Although this income might indicate that defendant could afford to pay more than tuition to a State-supported school, there are several factors which limit his ability to be more generous with his son. What savings defendant had accumulated have been de-

pleted by his unemployment. He must still support his second wife and their young daughter. In addition, defendant has a burdensome mortgage of $19,000 on his home. He also has other debts in excess of $6,000. Thus, although fairly certain of earning an above average $20,000 per year, Mr. Von Bargen has a number of responsibilities which curtail his ability to help his son Drew. It must be remembered that the purpose of a "support order is the welfare of the child and not the punishment of the father. It must be fair, not confiscatory in amount and intended to provide a reasonable allowance for support, considering the property, income and earning capacity of the father, and the station of life of the family": Commonwealth ex rel. Larsen v. Larsen, supra.

Plaintiff contends that defendant's standard of living continued on a high plateau even after losing his lucrative position in November of 1967. We find no merit in this contention. Defendant sent his wife on a five day Bermuda vacation which cost him $172. This was no prolonged expensive frolic, but a modest vacation trip. In fact, defendant was not even able to accompany his wife.

Defendant purchased a used car in December of 1967. The car was almost three years old and sold for $2,700, hardly an indication of affluence.

The Larsen case, supra, also stated that "in a case of this nature the court must first ascertain what advantages are offered by the more expensive college in relation to the child's individual needs, aptitude, ability and the child's anticipated vocation. It must then weigh these advantages against the increased hardship that would be imposed on the father to determine whether the additional expense is reasonable under the circumstances." In the instant case plaintiff has not proffered any advantages Hobart Col-

lege has which Pennsylvania's colleges do not have. However, Drew's expenses at Hobart are expected to be at a minimum rate of $3,150 per year—a formidable sum for any parent to pay.

Unlike the Larsen case, supra, little evidence has been presented regarding comparable Pennsylvania schools, their tuition, and their room and board fees. We do know that defendant expressed his willingness to pay for Drew's education had Drew consulted him regarding his choice of schools. The chancellor at page 46 of the notes of testimony specifically asked defendant:

"Q. What would your selection have been? What would your recommendation have been?

A. Well, at that point, unfortunately in my monetary situation, I would have had to insist that he become *a day hop or go to Temple or some other state supported school* that was more affordable." (Italics supplied.)

The burden of arriving at an equitable figure is increased by the nebulous nature of Mr. Von Bargen's future income.[2] In view of these factors, we feel that the interests of both father and son are best served by requiring defendant to pay $975 per year toward Drew's educational expenses. The defendant has paid this amount in the past under the 1961 support order, and this amount is sufficient to help obtain a suitable education in a number of Pennsylvania colleges.

Plaintiff has argued that defendant is liable for all the funds already provided Drew by her present hus-

---

[2] Plaintiff argues that defendant received income for November, 1967 through February, 1968, at the $28,000 per year rate even though his employment had ceased. She also points out that defendant received around $11,000 in pension funds. From these facts she contends defendant could afford to pay Drew's expenses at Hobart. We disagree. A prudent father faced with the peril of unemployment is not about to send his son to an expensive college.

band. She bases this contention on the fact that necessaries were supplied Drew which were the responsibility of defendant. Plaintiff overlooks the fact that although a college education is important, it is certainly not a necessity.

Similarly, defendant can not be expected to pay in full for college expenses which were incurred with complete disregard for both his preferences and his ability to pay. Plaintiff should have reached some mutual agreement before embarking on such an expensive course of action. The father does not lose his parental right to choose a school for his son which is within his means, merely because he is separated from the mother and son. Accordingly, we make the following:

## CONCLUSIONS OF LAW

1. Equity has jurisdiction;

2. Defendant has breached the 1961 modified court order by failing to make a support payment in the amount of $81.25;

3. The March 3, 1950, support agreement has not been rescinded by the parties, and defendant is liable for his son's college education;

4. The extent of defendant's liability is contingent upon his ability to pay.

## DECREE NISI

And now, March 5, 1969, it is hereby ordered, adjudged and decreed that:

1. Defendant should pay the sum of $975, effective September 1, 1968, in two installments, payable on or before September 1st, and January 1st, of each year in which his son attends college;

2. Defendant should pay the sum of $81.25 forthwith.

3. Defendant should pay the costs.