Harold L. Wood, J.
By petition dated and verified May 13, 1968, William Bates sought an order of support, under article 4 of the Family Court Act, as ‘ ‘ the son of the respondent and is attending Miami Dade College, Miami, Florida,” claiming “ inadequate .support and refusal to pay college tuition ”.
The legal and chronological history of this proceeding, albeit somewhat lengthy, is, in the court’s opinion, necessary for an orderly resolution of the novel issues here presented.
On July 26, 1968 respondent was arraigned on the petition afore-mentioned and, neither admitting nor denying the allegations therein contained, consented to the entry of an order, dated July 26, 1968, by Judge Slifkiu", a Judge of this court, wherein it was “ Ordered, that the respondent is to pay Three Hundred ($300.00) Dollars for tuition for September semester at Miami Day [s-ic] Jr. College, North Miami, Florida, plus he is to put up rent security and he is to pay the sum of Sixty ($60.00) a month rent to petitioner’s landlord direct, and he is to give petitioner the sum of Thirty ($30.00) Dollars a week direct for living expenses. He is also to furnish petitioner with an airline ticket to Florida. Respondent agrees to do this on condition he is furnished with a transcript of petitioner’s marks. If petitioner withdraws from college, he will consider this tantamount to failure.”
*500 On July 30, 1968 petitioner, by petition dated and verified July 30, 1968, made application for an increase modification of the said order of July 26, 1968, stating as a “ subsequent change of circumstances ’ ’ justifying modification that ‘ ‘ $30.00 a week support would be inadequate for petitioner to maintain himself in Florida”.
On August 20, 1968 a lengthy hearing was commenced before Judge Slifkik on the petition for the increase modification and adjourned for continuation to September 17, 1968. On September 17, 1968 a telegram was received by the court from petitioner’s mother advising that petitioner ‘1 is sick bedridden ’ ’ and requesting, inter alia, a postponement of his case. As requested, the continuation of the hearing was adjourned to October 21, 1968. However, on October 21, 1968, the court once again was advised by telegram from petitioner’s mother that “ William is sick can’t attend.”
Once again, the hearing was adjourned to October 29, 1968, at 2:30 p.m. On that date a telegram from petitioner’s mother was again sent to the court, but received at 3:30 p.m., advising that she would appear (on her own independent and pending case in Family Court for support) “ only if judge will direct my husband to pay lawyer’s fees for me and my son for a lawyer of calibre of Mr. Bates lawyer * * * I would like to get a new date for trial set after my Alabama divorce is set aside. Mrs. Joan Bates (William Bates).” Naturally, neither petitioner nor his mother appeared on October 29, 1968. However, respondent, through his attorney and at the court-designated time for the hearing, to wit, 2:30 p.m. (and before the receipt of the telegram), presented certain unsworn facts to the court regarding, inter alia, a purported fraudulent purchase of a 1968 Corvette automobile by petitioner and his mother, alleging that .respondent’s name was forged upon a retail installment contract for said car.
Based upon the nonappearance of petitioner on the increase modification application, the court (Slifkin, J.), on the record, dismissed the petition and, further, suspended the original consent order of support. By order, dated October 29, 1968 Judge Slifkin ordered the “ Order of Support, dated July 26, 1968 be and the same is suspended; and the modification petition be and hereby is dismissed with prejudice ”.
These proceedings remained quiescent until September 25, 1969 when, by petition dated and verified September 25, 1969, petitioner sought not only to reinstate the suspended order of support of July 26, 1968 but also to increase support to Three Hundred ($300.00) Dollars per week (“ according to his *501 father’s income and earning capacity”). Petitioner, further, assigned as justification therefor that “ there has been a change of circumstances in that said support order was suspended on October 29, 1968 and petition [sic] has no visible means of support ’ ’.
Extensive hearings were held on this matter before this court on January 20, 1970 and January 28, 1970. It is one of the contentions of the respondent (vehemently and capably briefed) that this matter must be dismissed because the conduct of the petitioner, as the son of the respondent, has been such as to constitute a complete emancipation relieving the father from the duty of support of his child.
Investigation by the court of that proposition discloses it to be most novel and the resolution thereof ordinarily would mandate a substantial review of the testimony adduced. The court however, chooses to quote part of the facts set forth by respondent’s attorney on this issue:
“ The father takes the position that the public policy of this State and our nation dictates that an assaultive, cruel, disrespectful, wasteful, ne ’er-do-well and deceitful son is not entitled to the largesse and bounty of the father, regardless of the father’s finances, because the son has, both in fact and in deed, and by operation of law, emancipated himself and is barred and estopped from seeking or receiving any financial support from his father, particularly in the context of undisputed evidence that he is hut four months from his 21st birthday; is healthy and employable; has made no effort whatsoever to obtain employment; has rebuffed his father’s efforts to obtain employment for him in the father’s very own business; has not applied himself successfully to either schooling or study, hut has withdrawn from several out-of-state colleges he selected and in which his father had enrolled him, and for all of which expenses, including boarding thereat, the father had paid, aside from a $30 to $50 weekly allowance, and all of which the son has totally dissipated, including the shocking telephone charges of some $3,600 he ran up at Bethany College in defiance of his father’s and the school’s orders to the contrary, after such activity had been discovered.” (Respondent’s memorandum, pp. 2, 3; emphasis is original.)
Taking this statement of petitioner’s conduct at face value (and it must be emphasized that petitioner has explained a good deal of his conduct by other and persuasive testimony), does that constitute such an emancipation of petitioner as to relieve respondent of the duty of support ?
*502 It may be cited as a general principle of law that ‘ ‘ the rights and duties # * * arising from the relation of parent and child are reciprocal, the general duty to support, educate and protect the child [rest] on the parents * * * and they having on the other hand in general the right to the custody and control of the child * * * and to his services and earnings * * * to obedience by the child (67 C. J. S., Parent and Child, § 2, subd. b, p. 629.)
Emancipation is a renunciation by a parent of the latter’s legal duties whereby he surrenders all his parental rights to the child or others. (67 C. J. S., Parent and Child, p. 812.) In determining whether a child has been emancipated it is the intention of the parent which governs and, further, it is the intention of a parent who has control and/or custody of the child involved. (See St. Croix v. St. Croix, 17 A D 2d 692; Spurgeon v. Mission State Bank, 151 F. 2d 702; Fiedler v. Potter, 180 Tenn. 176.)
•Whether or not a parent emancipates his minor child, however, rests with the parent and not with the child. (Rounds Bros. v. McDaniel, 133 Ky. 669; Wadoz v. United Nat. Ind. Co., 274 Wis. 383.)
‘ ‘ Emancipation ‘ is a product primarily of some act or omission of the parent, and cannot be accomplished by an act of the child alone ’. 39 American Jurisprudence, 702, section 64; Roxana Petroleum Co. v. Cope, 132 Okla. 152, 269 P. 1084, 60 A. L. R. 837.” (Schirtzinger v. Schirtzinger, 95 Ohio App. 31, 32.)
Intent to emancipate may be express or oral or implied from the parent’s conduct (Town of Plainville v. Town of Milford, 119 Conn. 380; Crosby v. Crosby, 230 App. Div. 651; Cohen v. Delaware Lackawanna & Western R. R. Co., 150 Misc. 450); it may be effected by implication of law, as distinguished from voluntary act of parent, as by the conduct of the parent inconsistent with his performance of his parental obligations or by assumption of the infant of a status inconsistent with subjection to control and care of the parent. (Murphy v. Murphy, 206 Misc. 228.)
Emancipation has been implied where a father able to support a minor son forces the latter to leave home and work elsewhere to sustain himself (Smith v. Gilbert, 80 Ark. 525); where a parent, through his own actions, becomes so degraded and dissolute that morals and decency excuse his child from living with him (Nichols v. Harvey & Hancock, 206 Ky. 112); where a child has been deserted or abandoned by a parent (Spurgeon v. Mission State Bank, 151 F. 2d 702, supra).
*503 There is no presumption of emancipation; rather, so long as the child is a minor, the presumption is that he is not emancipated (Carafo v. Carafo, 118 N. J. Law 123; Straver v. Straver, 26 N. J. Misc. 218) and the burden of proving emancipation of a minor by the parent is upon him who asserts and relies thereon (Spurgeon v. Mission State Bank, supra; Carafo v. Carafo, supra; Straver v. Straver, supra; Carricato v. Carricato, 384 S. W. 2d 85 [Ky.]).
Respondent’s attorney cites the case of Murphy v. Murphy (206 Misc. 228, supra) for the proposition that “ assumption by ¡the infant of a status inconsistent with subjection to control by his parent ” when applied in the light of petitioner’s conduct effectuates emancipation. The court cannot agree that that case so holds. There a husband and wife entered into a separation agreement on September 3, 1953 and custody was given to the wife with rights of visitation to the husband. Thereafter the wife secured an uncontested divorce decree which incorporated certain portions of the separation agreement. While the husband was exercising his visitation rights an argument ensued between him and his former wife and he assaulted her. While the former wife was driving in her car to the Magistrate’s office to lodge a complaint, the husband, following in his car, collided with the other car, causing injuries to the infant child. In an action for these injuries, the defendant father moved for summary judgment on the ground that the infant not being emancipated could not (in the posture of the law at that time) maintain an action against his father.
The court there held that the facts, as developed, did not justify an inference of nonemancipation and denied the motion for summary judgment. The language of the court is most interesting (as applied to the facts here at issue) when it stated (p. 230) that: “The habits and conduct of the defendant [father] and his treatment of the infant plaintiff * * * his failure to contribute to the support of the infant plaintiff * * * and his lack of control and supervision over the infant plaintiff since the separation could justify — although such facts would not compel — a finding that his conduct was so inconsistent with his parental obligations as to emancipate the infant plaintiff from him.” (Emphasis supplied.)
Thus, this case, rather than supporting respondent’s claim of emancipation through acts of the child, mandates that emancipation be accomplished by acts of the parent and, further, for a parent to effectively emancipate his child, the latter first must be .under his control and supervision, which, concededly, is not the fact in the case at bar.
*504 Here the father has no control over the petitioner son since custody has been and is in the mother (either by choice or as the result of a separation agreement and subsequent Alabama divorce, both subsequently held void and unenforceable by the Alabama courts).
Absent control over the infant, the latter (by his conduct) cannot be regarded as having adopted an inconsistent status. The word “ status ” as used in the Murphy case (supra) refers to a set of facts which have served to destroy the dependency of the child upon the support of the father. In this case, there is no change of “ status there is only a course of conduct by the infant toward his father. Such conduct, to wit: the refusal to attend school, disrespectful and assaultive behavior, etc., even if unexplained, does not carry with it the termination of the duty of a parent to support.
In short, while emancipation may occur “ by conduct of the parent inconsistent with the performance of his parental obligations ”, it does not follow that emancipation may result by conduct of a child inconsistent with the performance of the child’s obligations. As to what constitutes an assumption of an inconsistent status see Nelson, Divorce and Annulment ([2d ed., 1961], vol. 2, § 14.80) where it is stated: “ The right to compel support is, of course, based upon the dependency of the child, and a mother cannot compel payments of support money for children whose dependency upon her has ceased by reason of death, emancipation by marriage, attainment of majority, service in the armed forces, adoption, incarceration in penal or other custodial institutions, or economic sufficiency resulting from earnings, gifts or an inheritance.”
Two closing comments on the issue of emancipation: If, as respondent contends, the petitioner, by his actions, has emancipated himself, why did respondent, as conceded, continue to pay $30 weekly for his support during the entire time span of this alleged misconduct1? Also, how can respondent reconcile his claim of emancipation with his listing of petitioner as a dependent on both his 1967 and 1968 Federal income tax returns ?
It is the decision of the court, therefore, that the petitioner has not been emancipated and is entitled to such .support ‘1 as the court may determine ” (Family Ct. Act, § 413).
The court is faced next with the problem of determining first, whether the petitioner, under the facts of this case is entitled to support and, if so, the extent thereof.
Petitioner, by and large, concedes his poor scholastic record, his withdrawal from several colleges and the consequent loss *505 of money paid by his father therefor, his disrespectful attitude toward respondent, and his failure to secure employment. The reason assigned by petitioner as the focus of all his difficulties is the long and exacerbating marital troubles involving his mother and father. In this connection, the court, of its own knowledge, can bear witness to the truth of the adage that ‘1 no pot boils a more purulent mess than the one reserved for family problems ” (1961 Ann. Survey of Amer. Law, p. 467, cited in Cote v. Cote, 104 N. H. 345, 346).
Petitioner was nine years old when his parents separated, and, while a complete chronology of his parent’s marital 1 ‘ jihad ’ ’ is outside the scope of this proceeding, the court finds that petitioner’s behavior, unsuccessfully claimed as emancipatory, was and is excusable, for the most part, by the conduct of his father and mother in their long and troubled legal proceedings and its impact upon petitioner, and the court, therefore, will undertake to fix support for petitioner.
Petitioner seeks from his father support in an amount sufficient to enable him to attend college and to maintain himself in his own and separate apartment.
As far as requiring respondent to pay petitioner’s college expenses, the court is unable to bring itself to that decision. Petitioner, by his own testimony, has been and still is a peripatetic student and there is a clear absence here of those facts and circumstances which have led other courts to direct a private and/or college education for a minor child. See Kotkin v. Kerner, 29 A D 2d 367; Matthews v. Matthews, 14 A D 2d 546; Dicker v. Dicker, 54 Misc 2d 1089; Weingast v. Weingast, 44 Misc 2d 952.)
We pass now to petitioner’s request for a separate apartment and sustenance. The testimony discloses that in December, 1967 several water pipes burst in the marital home where petitioner resided with his mother. Photographs introduced into evidence show the premises, even to this day, to be in shocking condition. Petitioner testified that for him, to take a bath or shower necessitates his using the homes of friends and relatives, and to use sanitary facilities he must walk a quarter of a mile to the nearest gas station. However, respondent has proven not only that he is blameless for these conditions but that he has consistently paid for and maintained $60,000 worth of insurance on the premises and contents; that Joan Bates has had possession of that policy at all times; that he signed an authorization for the loss to be adjusted by the insurance company but that Mrs. Bates has refused to permit the loss to be adjusted and has taken no affirmative action to remedy con *506 ditions there. As an owner by the entirety of the premises, respondent has been and is anxious to have the adjustment made but Mrs. Bates, for reasons unexplained, has refused to co-operate.
The court, in the light of these facts, is unwilling to compel the father to provide separate accommodations for petitioner — especially accommodations selected by petitioner for which he “needs” between $220 to $240 monthly as rental for a 4%-room apartment to be used by himself alone. “ The purpose of a support order is the welfare of the child and not the punishment of the father ”. (Commonwealth ex rel. Larsen v. Larson, 211 Pa. Super. Ct. 30, 34.)
Petitioner has requested that any order of support granted be made retroactive to July 30,1968, the date of the petitioner’s application for an increase modification of the order of Judge Slifkikt, dated July 26, 1968, entered, as hereinabove stated, on consent of the parties. As stated above, this petition of July 30, 1968 was dismissed “with prejudice ” by order of Judge Slifkiu dated October 29, 1968, which order also suspended the original consent support order of July 26, 1968.
Respondent maintains that any award now granted cannot be made retroactive to either July 26, 1968, or October 29, 1968 “ absent an appeal therefrom ” because this “Court of co-ordinate jurisdiction has no such appellate reviewing powers and may not overrule Judge Slifkin [citing cases].”
The court is of a different opinion. First of all, “ the court has continuing jurisdiction over any support proceeding * * * and may modify, set aside or vacate any order issued in the course of the proceeding ” (Family Ct. Act, § 451).
“ Proceedings in the Family Division of the Domestic Relations Court * * * are rarely final. Parties to a proceeding in this court may make application for modification of an order entered, either upward or downward, or for the suspension of the order or the vacating thereof, as changed circumstances may indicate, and as the court finds such circumstances compelling. The basis for what might appear to be an anomalous situation rests in the fact that conditions, financial, economic or otherwise, may change and the change * * * will affect the parties, and in consequence give rise to justification for a change in the order entered by the court. Orders of this Court should be consonant with the facts as they are or as they are or as they change ”. (McNeill v. McNeill, 35 N. Y. S. 2d 585, p. 587.) (See, also, “ Cannon ” v. “ Cannon ”, 190 Misc. 677; Liebmann v. Liebmann, 22 A D 2d 663.)
*507 Secondly, in the case of Reiss v. Reiss (23 A D 2d 692), the court held that on an increase petition, a hearing should be held to determine the truth of the asserted charges and the child’s need for increased support in the light of current conditions and the need of the child. It must be borne in mind that, when petitioner’s support was suspended and his petition for modification dismissed, it was not as the result of any completed plenary hearing held but actually on a .statement by respondent’s counsel to the court on October 29, 1968 plus the nonappearance of petitioner on that date, as hereinabove more fully .set forth. Only now does the court have before it complete testimony as to petitioner’s needs and respondent’s resources. In view thereof, the court feels that any support ordered may be made retroactive to July 30, 1968, the date of the original petition for an increase modification. With that determination made, the court must now decide whether the change of circumstances there alleged has in fact been Sustained and if so, the means of the respondent to pay the support to be ordered.
Based upon the evidence adduced on direct and cross-examination of respondent, together with his 1968 income tax return, in evidence, the court finds that respondent earns approximately $57,000 yearly, on which he pays approximately $25,000 in Federal, State, and city taxes. His business pays one half of his apartment rental of $350 monthly as well as one half of his car rental, and his charge accounts are paid by his business. His present “ wife ” is in the travel business and any vacation trips taken by him are at a reduced rate. He testified that rather than risk any “ hassle ” with the tax authorities over business deductions, he pays them himself and claims no deduction, as he has no expense account given him by his employers. However, no stated amount thereof was disclosed to the court by the testimony.
Taking all this into consideration, it is the decision of the court that respondent, having the means, shall pay directly to petitioner, as and for his support, the sum of $65 weekly, retroactive to July 30, 1968.
Payments shall be effective and commence upon service of the order to be entered herein, with notice of entry, upon the attorney for respondent, with credit, of course to be given respondent for all payments made by him during that time.
Finally, petitioner’s attorney has made application, under section 438 of the Family Court Act, for counsel fees. After-careful consideration of the statement of services rendered and *508 the letter of respondent’s attorney, dated February 19, 1970, which the court will deem in opposition thereto, and in the exercise of the court’s discretion, the attorney for the petitioner is awarded the sum of $300 as and for counsel fees, payable directly to said attorney within 30 days after entry and service of the order in the manner afore-mentioned.
(Amendment of decision, April 30, 1970)
On the court’s own motion, the decision dated March 27, 1970 is hereby amended and modified as follows:
(1) The retroactive date is hereby changed from July 30, 1968 to October 29, 1968, inasmuch as the adjournments of the hearing on petitioner’s application, between the date of filing and October 29, 1968, were at the specific request of petitioner and/or his mother, on his behalf. As respondent attended, with counsel, on each occasion, it seems more than equitable that respondent not be compelled to pay retroactively to July 30, 1968.
(2) Respondent has produced for examination of the court, through its law assistant, checks conclusively entitling him to a credit for payments made between October 29, 1968 and up to and including May 1, 1970 amounting to $2,900. The total amount due petitioner for the period October 29, 1968 through May 9, 1970, the date of petitioner’s emancipation, has been computed at 79 weeks at $65 per week or $5,135, leaving, thus, a balance due and owing petitioner of $2,235, as of May 1, 1970 plus, of course, one more check of $65 due petitioner for the week ending May 9, 1970.
Respondent is directed to pay the sum of $2,235 as follows: $750 within 30 days after service of the order to be entered herein, with notice of entry, upon respondent’s attorney and the balance of $1,485 to be paid in weekly installments of $65 commencing one week after payment of the $750 hereinabove directed.
All payments shall be made through the Accounts Division of the Probation Department of this court, 214 Central Avenue, White Plains, New York, 10601 and by them to be forwarded to petitioner at such address as he shall forthwith designate, in writing, to the said Accounts Division, copy to the court for its records.
Except as hereinabove indicated, the remainder of my decision of March 27, 1970 stands as published.