Reginald S. Oliver, J.
William Schultz, Jr., will be 17 years of age on June 12, 1975. He has spent most of his life in and out of various foster homes, with little attention from his father, and none from his mother. He has an older brother and three older sisters, who were similarly pretty much farmed out. His father was married for the third time in July, 1972, to a woman 10 years his junior, and for a while William lived with the new family unit.
This group consisted of his father, his new stepmother, a stepbrother aged 12, and a stepsister aged 8. William shared a room with the stepbrother, who would not leave William’s belongings alone, and destroyed posters and record albums belonging to him. William’s father either would not or could not control the stepson, and there was continual trouble with the new stepmother. William began staying away from home as much as he could, and being around school rather than face the turmoil at home. He finally was unable to submit to further pressure, and moved out.
He found a room and a job which would support his needs, and undertook an accelerated school program so he could graduate in three years and enlist. His courses, among others, included electronics, general biology, intermediate algebra, mechanical drawing, plus the required social studies and English. He maintained an 80 average, and was considered a good student. He has never been in any kind of trouble.
William was unable to continue working and carry his school load, and eventually applied for, and is now receiving public assistance in the amount of $244.66 a month. He rents a room in his school district, has kitchen privileges, and according to his case worker, is doing very well, except for some emotional problems caused by his family situation. Since October of 1974 the father has done nothing to help support his son. The Department of Social Services in this proceeding seeks reimbursement from the father, at least in part, for the moneys expended for William’s support. The father has taken the position that William can return home and be supported, *605 and that he won’t support his son, or in the alternative, he is not financially able to contribute to his support.
The court finds from all the testimony given by the father in court, and from the reports of the Social Services caseworker and the school counselor, that William is an emancipated minor, and because of unbearable conditions he was within his rights when he left the home.
A minor becomes emancipated by a parent when the latter renounces all legal duties and voluntarily surrenders all legal rights of his position to the child. The parent’s acts sever relationship as completely as if the child were of age. Emancipation is a product of an act or omission by the parent. The parent, however, cannot be released from his obligation to support the child by an act of the child, since because of his minority, the child cannot himself waive the parent’s duty. (59 Am Jur 2d, Parent and Child, § 67; 39 Am Jur 2d, Parent and Child, § 64; 59 Am Jur 2d, Parent and Child, § 93; Matter of Bates v Bates, 62 Misc 2d 498.)
Emancipation refers to an express or implied situation, where it is to be concluded that the parent no longer intends to support the child, while the child is still under his majority. A self-supporting child is an emancipated child. (See Matter of Fauser v Fauser, 50 Misc 2d 601; Matter of Hotetz v Hotetz, 60 Misc 2d 271.)
The Court of Appeals has held that where by no fault of the parent, the child abandons the parent’s home to seek his fortune or avoid parental discipline and restraint, such child forfeits all claim to support. (Matter of Roe v Doe, 29 NY2d 188.)
In Matter of Jesmer v Dundon (29 NY2d 5), the same court held that the parent is under a duty to support his child, and must contribute to its support, when such child had been committed to an institution as a juvenile delinquent or person in need of supervision. The court held the requirement of contribution to support under section 233 of the Family Court Act to be constitutional.
The question presented in this case is whether, if able, the father of William should be required to reimburse the Department of Social Services.
The only case in point which the court can find is Niesen v Niesen (38 Wis 2d 599), reviewed in American Law Reports (3d series, vol 32, p 1047). The Wisconsin court held that *606 emancipation, whether total or partial, is personal to the parties and does not shift responsibility to support the child from the parent to the public, when the child is receiving public assistance.
This court adopts that rule. As between William and his father, if William can support himself, and continue his education, no one is concerned except them. However, when it becomes necessary to expend public funds to assist William, he can no longer be considered emancipated, at least as to the public, and therefore the father must contribute, according to his means and ability. (Family Court Act, § 413.)
In this case, the respondent is employed full time at Kodak, and without overtime has a gross weekly income of $256. He is supporting his present wife, her two children by a previous marriage, and himself. He has many self-incurred obligations, which legally do not affect his means or ability to contribute to the support of his son William. (See Matter of Boyd, 40 AD2d 588, app dismd 31 NY2d 708.)
The court finds that the respondent is able to pay $25 per week toward the support of William, at least until the latter is no longer receiving public assistance, such payments to be made through the Support Bureau.