**F. Lee Austin v. Mildredann H. (Austin) Sicilliano**

[400 A.2d 981]

No. 222-78

Present: Daley, Larrow, Billings and Hill, JJ., and Smith, J. (Ret.),
Specially Assigned

Opinion Filed April 3, 1979

116

*Kaplan & Kaplan,* Burlington, for Plaintiff.

*Bing, Bauer & Cain,* Burlington, for Defendant.

**Daley, J.** The plaintiff secured a decree of divorce from the defendant on March 12, 1964. The care and custody of the minor child, Teri Anne, was granted to the defendant, Mildredann Austin, now Sicilliano.

Paragraph 6 of the decree, which incorporated the provisions of a separation agreement, provided as follows:

> In the event TERI ANNE AUSTIN desires to continue her education after completing secondary schooling, the libelant shall pay the reasonable costs thereof which

obligation shall be limited to four (4) years of post-secondary education and shall include tuition, books and reasonable expenses for her room and board.

On May 18, 1978, the defendant brought a motion for contempt. It alleged that the plaintiff violated Paragraph 6 by refusing to provide information Teri Anne required to apply for college financial assistance and by refusing to agree to pay more than $2,000 per year toward the cost of her higher education. The prayer for relief also requested the court to determine the extent of his obligation under that paragraph. The plaintiff moved to dismiss, for failure to state a claim upon which relief could be granted or, in the alternative, for a modification of the decree, alleging change of circumstances.

The cause was heard upon the merits. Based upon its findings of fact, the court concluded that the plaintiff was in willful contempt for refusing to pay more than $2,000 annually. His motion to dismiss was denied. No ruling was made upon his motion to modify. In order to purge himself of contempt, he was ordered to pay the full costs of his daughter's tuition, room, board, and books at the University of New Hampshire. He now appeals, challenging the order of contempt as being unsupported by the evidence, findings and conclusions of law. He further contends that the court erred by not ruling upon his request for modification.

Teri Anne graduated with honors from Chelmsford High School in Chelmsford, Massachusetts on June 4, 1978. She would like to pursue a veterinary career. To that end, she applied to Harvard, Tufts, and the University of New Hampshire, after also investigating Cornell, Holy Cross, Dartmouth, Bowdoin, Boston College, and Syracuse. It should be noted that she did not apply to either the University of Massachusetts, a state-supported institution where she resides, or the University of Vermont, where her father resides. She was accepted at the University of New Hampshire for the 1978–1979 academic year.

The first question for our determination is whether the court properly found the plaintiff in contempt upon the pleadings and evidence before it. The decree did not impose

any duty to provide financial information; therefore he could not be held in contempt for his failure to do so. Paragraph 6, however, obligates the plaintiff to pay the "reasonable costs" of his daughter's education, although no specific amount is stated. At the time the petition for contempt was instituted, the parties could not agree what was "reasonable." Relying upon his opinion as to the average cost of college at the time the decree was made, the plaintiff refused to contribute more than $2,000 toward her expenses, an offer that the defendant found insufficient. The trial court made no finding on this material issue. It simply found, based on costs at the schools that Teri Anne had examined, that the total expense of approximately $5,000 at the University of New Hampshire was reasonable and comparable to other colleges. Its finding, however, is not supportable.

The reasonable cost of a college education depends upon the circumstances. The court should consider such factors as the financial ability of the parties, the availability of less expensive alternatives such as state universities, and the special needs and general welfare of the child. See *Cleveland v. Cleveland*, 161 Conn. 452, 461, 289 A.2d 909, 913 (1971). It must ascertain what advantages are offered by more expensive schools in relation to the child's individual needs, aptitude, ability and anticipated vocation. These benefits must then be balanced against the increased hardship that would be imposed on the father to determine whether the additional expense is reasonable under the circumstances. *Commonwealth v. Larsen*, 211 Pa. Super. Ct. 30, 34–35, 234 A.2d 18, 20 (1967).

Because the finding that the annual cost at the University of New Hampshire is reasonable is based only upon the few schools in which the child was interested, it cannot stand. In essence, the effect of the court's decision is to allow the child, in selecting institutions, to define what is "reasonable," and, hence, the extent of her father's obligation. Although the colleges are outstanding, the court should have also considered the annual expenses at reasonably accessible state universities and the merits of their preveterinary curricula. Although Teri Anne could have applied to the University of Massachusetts, where she resides, or the University

of Vermont, where her father resides, she did not. She rejected the former because it was said to have disciplinary problems and the latter because she thought its preveterinary curriculum inadequate. The court made no findings as to the fees at, or allegations concerning, these universities. Its decision then merely reiterated the child's choice.

We do not mean to infer that the child should be prevented from attending the college of her choice simply because it is more expensive than the state university. On the other hand, we do not believe that she should have absolute discretion in selecting a college, and thereby unilaterally increase her father's costs. She has the right to be educated in a style consonant with her father's means. While the plaintiff has agreed to sacrifice, she, if necessary, must cooperate to lessen the burden. The trial court must exercise its discretion to determine what is just and equitable to the child and to the father; the determination cannot be left, without inquiry, to the child.

A second basis exists for reversing the order of contempt. In *Brooks* v. *Brooks,* 131 Vt. 86, 92, 300 A.2d 531, 535 (1973), this Court defined the purposes of civil contempt as being twofold: first, to punish the guilty party; second, and perhaps more importantly, to provide restitution for the party injured. In order to punish for contempt it was incumbent upon the court to have found, based on the evidence, not only that the plaintiff refused to pay, but also that he was able to pay and was under a present duty to pay. *Spabile* v. *Hunt,* 134 Vt. 332, 335, 360 A.2d 51, 53 (1976). Such is not the case before us. The evidence presented and the court's findings reveal no sum due and owing for the cost of his daughter's education. Therefore, he could not be in violation, especially in willful contempt, of the provisions contained in the original decree.

We would also point out that the court's finding as to the fair market value of the plaintiff's home is not a finding of fact. See *Krupp* v. *Krupp,* 126 Vt. 511, 236 A.2d 653 (1967).

The judgment of the court, not being supported in fact or in law, will be vacated and set aside and the cause remanded for a new hearing. The plaintiff, having presented

evidence upon the issue of modification, was entitled to a ruling by the court, and since none was made, the cause will be remanded for a new hearing on this issue also if the plaintiff so desires.

*The order of the superior court dated July 25, 1978, is vacated. Cause remanded for new hearing.*